## J. R. SAUNDERS & BENJAMIN WORLEY v. HARTWELL & CHAMBERS.

### IN THE SUPREME COURT OF TEXAS, AUSTIN TERM, 1884.

*Registration—Notes.*—Notes given for the purchase money for land, and evidencing on their face a reservation of the [vendor's lien, when properly acknowledged, are subject to registration under our statute.

*Notice.*—Where such notes are recovered it is notice to subsequent purchaser of the land, of the existence of the lien, although the deed upon record recites that the purchase money has been fully paid.

Appeal from Coryell county.

### OPINION.

The following are the conclusions of law found by the court :

1. "On the 37th day of February, 1878, the defendant, J. R.

Saunders, conveyed the land upon which the mortgage is sought to be foreclosed in this suit, to his co-defendant, J. H. Chrisman. The conveyance from Saunders to Chrisman was filed for record in Coryell county, February 28th, 1878, and afterward duly recorded.

2. "On the 30th day of November, 1878, the defendant, J. H. Chrisman, executed the alleged mortgage to P. N. Harris, which was filed for record in Coryell county on the 23rd day of January, 1879, and afterward recorded. This mortgage was executed to secure notes sued on.

3. "On the 16th day of December, 1878, Chrisman reconveyed the alleged premises to Saunders, his deed to Saunders being filed for record in Coryell county, on the 3rd day of January, 1878, and afterward duly recorded. The sole condition of this transaction was the surrender by Chrisman of three notes hereinafter mentioned.

4. "The consideration in the transaction first above mentioned, was in part, three promissory notes for five hundred dollars each, executed by Chrisman to Saunders, payable to Saunders' order, dated 27th of February, 1878, and reciting that they were given for three acres of land, situated in Coryell county, Texas, about three hundred yards north of the public square in the town of Gatesville, upon which the steam mill etc. is situated; said notes expressly retained the vendor's lien in the usual form, did not designate the survey out of which the alleged three acres of land were taken. These three notes were acknowledged by Chrisman before L. M. Allen, County Clerk of Coryell county, Texas, and by Allen afterwards recorded in the deed records of said county, the acknowledgment being in the usual form an acknowledgment to a deed.

5. "The deed from Chrisman to Saunders was absolute on its face, reciting a paid consideration.

6. "Harris, when he took the mortgage from Chrisman, had no notice, actual or conservative, of the vendor's lien retained by Saunders in his sale to Chrisman.

7. "Saunders, when he took the conveyance from Chrisman, had no notice, actual or conservative, of the mortgage to Harris.

8. "A part of the consideration in the first mentioned sale by Saunders to Chrisman, was a certain 300-acre tract of land which Chrisman conveyed to Saunders, 100 acres of which, prior to this

transaction, was the property of Chrisman's son. This 100 acres was encumbered by a mortgage executed by Chrisman's son to P. N. Harris to secure the payment of a note. Chrisman executed his note to Harris in lieu of the one Harris held against his son, and took from his son a conveyance of the 100 acres in order to clear the title to the 300 acres which he afterward conveyed to Saunders. This note thus executed to Harris, is the note sued on in this case, and to secure the payment of which, Chrisman executed the alleged note to Harris.

9. "Of the transaction between Chrisman and his son, by which the note sued on was substituted for the note from Chrisman's son to Harris, Saunders had no notice, actual or constructive.

Upon which conclusions of fact, the court deduced the following conclusions of law, to-wit:

1. "Harris having acquired his mortgage lien without notice of the lien retained by Saunders, his rights under the mortgage cannot be affected by such lien.

2. "The conveyance by Chrisman to Saunders, the consideration of which was the surrender of the former's notes, cannot in law constitute the latter a purchaser for a valuable consideration within the meaning of the rule giving protection to innocent purchasers. In such case, the mere want of notice is not sufficient; the purchaser must part with value, not simply surrender an antecedent debt. If Harris, when he took his encumbrance, was protected against the tacit lien of Saunders, did not, in my judgment change the status of the parties.

3. "The notes executed by Chrisman to Saunders were not instruments permitted, or required by law to be recorded. The registration of them, therefore, did not, in itself, give notice of the lien.

The appellants, Saunders & Worley, assign as error, that;

1. "The court erred in holding that the deed from J. R. Saunders to J. H. Chrisman, to the land in controversy, and three purchase money notes of said J. H. Chrisman to J. R. Saunders and Kinsey, all of which are duly acknowledged for record and recorded together in the office of the clerk of the County Court of said Coryell county, prior to the date of the pretended mortgage of J. H. Chrisman to Harris, on November 30th, 1878, constituted no notice to said Harris of J. R. Saunders' superior and prior lien on said land,

the court holding that the three notes were not such instruments concerning lands and tenements, as after having been duly acknowledged, or proved, according to law for record are authorized by Article 4331 of the Revised Statutes to be recorded, and that,

2. "The court erred in its conclusion of fact and law filed among the proceedings, as shown by paragraph No. 2, in this, that Harris acquired his mortgage without notice of the lien of Saunders, and that his rights under his mortgage could not be affected by the lien of Saunders.

We will consider the first ground assigned as error. · The deed from Saunders to Chrisman, together with the three purchase money notes reserving the vendor's lien, were recorded on the 28th day of February, 1878; the mortgage of Chrisman to Harris was executed the 30th of November, 1878, and consequently the question involved under this assignment is not affected by any change which may have been affected by Article 4331, Revised Statutes; said revision having been adopted afterward, but must be determlned under the preexisting laws governing the subject of registration.

The deed from Saunders to Chrisman being absolute on its face, acknowledging as it did, full payment of the consideration which was named in it, and which consequently reserved no lien on its face, did not, by its registration, afford any notice whatever, of the existence of such lien, if any had in fact existed, and unless the mortgagee, Harris, was otherwise affected with notice than as shown by the deed referred to, evidently the mortgage would not be affected by the vendor's lien held by Saunders. But the purchase money notes for the land were recorded at the same time with the deed, and this presents the question whether the registry of them, containing recitals showing the reservation of the vendors lien on the property conveyed in the deed, are such instruments as may be recorded under the law of registration.

The eonstruction to be given to Article 4989, Pas. Dig., will determine whether such notes as these are, evidencing, not only a promise to pay money, but also being the evidence of a contract reserving a vendor's lien upon land, are such instruments of writing in relation to land, as the Statute contemplates may be recorded.

The language of the act is general and comprehensive, and the Statute does not, oteerwise than as below quoted, attempt to speci-

fy and designate the various instruments of writing which may be the subject of registration.

It reads as follows : "Every title, bond, or other written contract in relation to lands, may be proved, certified or acknowledged, and recorded in the same manner as deeds for the conveyance of land; and such proof, acknowledgment, or certificate, and the delivery of such bond or contract, to the clerk of the proper court, to be recorded, shall be taken and held as notice to all subsequent purchasers, of the existence of such bond, or contract."

Notes of the character of these, must, we think, be deemed "written contracts in relation to lands," within the meaning of the article above quoted.

It is said by Mr. Wade, in his work on The Law of Notice, (Sec. 113) that, in construing some of the registry acts of the states of the Union, it has been held that only instruments by which the legal title to the premises was conveyed, were entitled to registration. (Halstead v. Bank of Kentucky, 4 J. J. March, 554.) But, the prevailing rule now is, that any instrument by which an equitable interest in the property is affected, or a right arising out of the property is granted or reserved, should be recorded, and if executed with all the formalities prescribed by law, the record will be constructive notice to subsequent purchasers, or incumbrancers to the same extent as the record of a conveyance of the legal title." (Citing authorities from New York, Maryland and Pennsylvania.)

It was held in Henderson v. Pilgrim, (22 Texas, 476) that an assignment of a mortgage is a "written contract in relation to land" within the meaning of our registry laws, such as ought to be recorded, to make it effectual against subsequent purchasers for a valuable consideration, without notice. Justice Bell remarked in the opinion in that case, "that it is the obvious policy of the registry laws, to require all snstruments concerning lands to be recorded in the proper county." (Citing the above quoted article, as well as several other sections of statutes, some of which are now no longer in force.

In the case of Peterson v. Lowery, (48 Texas, 408,) it was decided that a written acknowledgment by the grantee of a land certificate already located, that he had previously sold and conveyed it, is a "written contract in relation to land" and as such, permitted under the statute to be recorded; and when duly recorded, is notice to

subsequent purchasers from the maker of such instrument. (See also Miller v. Alexander, 8 Texas, 44,) where it was held that a sheriff's deed without a seal or scroll, (when deeds were required to be executed with one or the other) was a contract in relation to land, and was permitted to be recorded under the article in question.

Although the decided cases which have been cited, refer to written contracts relating to transfers, assignment of interest in land, and written agreements which are intended to evidence contracts to convey title to land, the reasons upon which they are founded in embracing such within the meaning of the Statute, seem to apply with equal force to written contracts in the form of promissory notes which evidence the reservation of an equitable interest or right in the land for payment of the purchase money, for which the notes were given. Such an interpretation seems to be fully warranted by the "prevailing rule" indicated by Mr. Wade, which has been quoted, and to accord no less with what we deem to be the spirit of our laws of registration.

The notes were each for the sum of $683.33 1-3, and were not negotiable, being payable to J. R. Saunders and Eliza Kinsey. They contained the following recitals: "It is hereby acknowledged that the above note was given for a part payment of three acres of land located about three hundred yards north of the town of Gatesville, Coryell county, Texas. including the steam mill located on said premises, together with all the buildings, machinery, and improvements on said land, for which a vendor's lien is hereby retained on said premises to secure the payment of the above note."

The deed from Saunders to Chrisman contained the following description of the premises conveyed, viz: "Lying and being situated in the State of Texas, and county of Coryell, to-wit. On the Still House Branch, about three hundred yards north of the public square, in the town of Gatesville, and more particularly described as being a part of a 15 1-2 acre survey sold by R. G. Grant to F. H. Lutterloth, beginning 70 vrs. S. 32 W. from S. W. corner of a 50 acre survey sold by R. G. Grant to Lutterloth, a rock for corner; thence S. 60. W. 67 vrs., a rock for corner; thence N. 30 West 75 varas to the centre of Still House Branch; thence up the same to the S. W. corner of a ten acre survey, it being a part of the 15 1-2 acre survey heretofore mentioned, thence S. 50 E. 70 varas to place of be-

ginning, containing three acres more, or less. Together with all and singular the rights, members, hereditaments, and appurtenances to the same belonging, or in any wise incident or appertaining.

The deed from Chrisman to Saunders followed the foregoing description in every particular, as did also the mortgage here sued on.

The notes gave, it will be noticed, substantially the same description, omitting, however, the metes and bounds of the said three acres, and omitted that part of its description which designates the part conveyed as being "a part, of a 15½ acre survey sold by R. G. Grant to F. M. Lutterloh." The description, however, which the notes did give, clearly designated the locality of the steam mill, and that it was situated on the said three acre tract, and the description, as far as it went, corresponded with and was consistent with the description given in the other instruments of writing above referred to. The record, therefore, was such as indicated facts sufficient to put a person seeking for information concerning the identity of the land mentioned, on inquiry, and if they were such as would have reasonably led the inquirer to a knowledge of what particular tract of three acres was referred to by the notes, it would be a sufficient description.

"In order that the record of a deed shall be vitiated by errors, or uncertainty in the description, or other part of the original, the error must be in a matter of substance, or the uncertainty one which cannot be rendered certain by such inquiries as the record would naturally excite." (Wade on Notice, sec. 183.)

The error in the deed, in order to vitiate the record thereof, must be one calculated to mislead the purchaser; therefore, if the purchaser had any knowledge of the error, or from his knowledge of the property and its surroundings, would have been able to interpret the record and give it the meaning it was supposed and intended to convey, it would be sufficient to charge him with notice. (Id sec. 185).

It may be supposed, therefore, that the recitals contained in the notes might have lead to such inquiry as to have led a subsequent purchaser to know that the deed which was recorded with the notes from Saunders to Chrisman, and which contained a full and minute description of the land, although it acknowledges payment of the purchase money, was the identical deed which conveyed the land referred to in the notes, the vendor's lien on which was reserved in

said notes. And it would have led to a knowledge of the fact that the notes and the deed were instruments contemporaneously executed to evidence one entire transaction; that they were to be construed together as one instrument, (Dunlap v. Wright, 2 Texas 59,) showing in that aspect most clearly every fact essential to be known to advise such purchaser of the existence of the vendor's lien. See McKelvain v. Allen, 58 Texas 387, and authorities there cited, for the construction and effect to be given to a deed and note thus contemporaneously executed. The doctrine of that case shows that the notes in this case, construed with the deed, evidence that the purchaser retained a vendor's lien, notwithstanding the want of such reservation in the deed.

The rule of law which we have applied in this case, as to the effect of the registry of the notes and deed, in charging subsequent purchasers with notice, and putting such upon inquiry, does not infringe upon nor conflict with the decisions made in Taylor v. Harrison, 47 Texas 457, and McLouth v. Hurt, 51 Texas 120; the former case holding that although a deed duly recorded is notice to subsequent purchasers and creditors of such facts as they would have learned from the record, had they examined it, that such notice does not extend to facts which by an examination of the record, a prudent man might have been put upon inquiry to ascertain, and which were not contained in the record. The latter case, that registration is constructive notice only of what appears on the face of the deed as registered.

A deed with a defeasance separately executed constitutes the transaction a mortgage, and both instruments will be construed together as one instrument. "So where there was a written defeance to an absolute deed, and the deed was recorded among the absolute deeds, but the defeasance was unrecorded, the two instruments were treated as one, and that one a mortgage, which not being properly recorded through the negligence of the parties interested, was postponed to the lien of a subsequent judgment." (Wade on Notice, sec. 187, citing several authorities.)

Defeasances of this character would, under the statute under consideration, fall within the category of "written contracts in relation to land" permitted to be recorded, and the analogy of the case supposes, to that in hand; we think is relevant and forcible." "Defe-

asances are now expressly included in the statute of registration." (Revised Statutes, art. 4331.)

We are of the opinion, therefore, that registry of the deed and the notes, constituted evidence of constructive notice of the existence of the vendor's lien ; the weight and the sufficiency of the evidence to establish the fact of notice, was a question of law and fact to be determined by the court under all the evidence. The evidence was sufficient, we think, to charge P. N. Harris with notice constructively of the vendor's lien ; and the plaintiffs, assignees of the mortgage, are not, therefore, in a position which enables them to controvert the validity of the title to the land derived by Saunders under the conveyance made to him by Chrisman.

Being chargeable with notice of Saunder's equitable lien as a vendor, neither Harris nor his assignees can question the validity of a retransfer of the property to Saunders, in satisfaction of the unpaid purchase money. This view precludes the necessity of considering the second ground of error hereinbefore specified.

The court erred in its decree adjudging that J. R. Saunders and Benjamin Worley have no right in the property, superior to the rights of the plaintiffs, and we conclude that the judgment ought to be reversed and the cause remanded.     Walker, J.