## M. O'CONNELL v. HENRY RUGELY.

Decided January 9, 1908.

**1.—Negotiable Instrument—Assignment—Proof.**

The assignee of a negotiable instrument may maintain a suit upon the same in his own name and may prove his ownership by parol testimony. A written assignment or endorsement is not the only method of proving the assignment.

**2.—Appeal—Suggestion of Delay—Effect.**

When an appellee suggests that the appeal is taken only for delay and prays for the statutory ten percent damages, the appellate court is thereby authorized to consider any and all errors, whether assigned or not, which the record discloses.

**3.—Promissory Note—Attorney's Fee Clause—Effect upon Negotiability.**

A stipulation in a promissory note for the payment of a certain percent of the amount due, as attorney's fee, does not destroy the negotiability of the note.

**4.—Same—Same—Nature of Contract.**

A stipulation in a written contract for the payment of a certain percent of the amount due as attorney's fee in case suit is brought upon the same or it is placed in the hands of an attorney for collection, is a contract of indemnity only. It is not a penalty nor is it an agreement for liquidated damages. The plaintiff can recover only the amount paid or agreed to be paid to his attorney, not to exceed the percent stipulated.

**5.—Same—Pleading and Proof.**

To entitle a plaintiff to recover attorney's fees under a contract stipulating for the same, his pleading and proof must be as full as upon any other contract of indemnity, and as if the suit was brought separately upon the agreement to pay attorney's fees.

**6.—Attorney's Fee Clause—Review of Cases.**

See this case for a full review of the cases evolving the doctrine now accepted upon the subject of the attorney's fee clause in written contracts,

Appeal from the County Court of Matagorda County. Tried below before Hon. Jesse Matthews.

*Holland & Krause,* for appellant.

*Gaines & Corbett,* for appellee.

HODGES, ASSOCIATE JUSTICE.—On April 30, 1902, appellant M. O'Connell, together with J. A. Elmore, executed the following described promissory note payable to the Bay City Bank:

"Six months after date, for value received, I, we or either of us, as principals, promise to pay to the order of the Bay City Bank at its office, Two Hundred Fifty Dollars with 10% interest per annum from maturity until paid, and 10% attorneys fees if suit be instituted on this note or if it is placed for collection. I, or we, the signers and endorsers, hereby waive protest and notice of protest, and agree to the extension of this note after maturity without notice.

"(Signed) J. A. Elmore,<br>"M. O'Connell."

The Bay City Bank was a copartnership composed of H. Rugely, Henry Rugely and Hy Rugely, doing a banking business at Bay City, Matagorda County, Texas. Subsequent to the making of the note, and before suit was filed, the partnership was dissolved, and Rugely, appellee herein, became the owner of the note. The note not being paid at maturity, he instituted suit thereon in the County Court of Matagorda County, and recovered a judgment against the makers for the full amount of the principal, interest and attorney's fees.

It appears that the note bore no written endorsement and nothing in connection therewith in writing to indicate a transfer from the Bay City Bank to the appellee; and in the court below the only contention made by the appellants was, that appellee had failed to prove his ownership of the note and the right to sue thereon, basing their contention upon the proposition that the note, being a negotiable instrument, could not be transferred except by a written endorsement, or other evidence in writing. Upon the trial of the case the plaintiff introduced the note in evidence, and himself testified as to the existence and dissolution of the Bay City Bank, and that he acquired the note sued on in the due course of trade for a valuable consideration and was at that time the owner and holder. The appellants introduced no testimony, but relied exclusively upon the insufficiency of the evidence to authorize a recovery for appellee. It seems that O'Connell, who appears to have been a surety on the note, is the only one who has appealed.

The assignments of error contained in the record are based upon the refusal of the court to instruct the jury according to the appellant's theory concerning the proper and only legal method of transferring negotiable paper payable to order, which, he contends,

is by endorsement, or other written transfer. In support of that proposition he cites Tiedeman on Commercial Paper and Am. & Eng. Ency. of Law, neither of which sustains his contention in full. There the common law rule is stated, that a written transfer is necessary to assign the legal title, yet the equitable title may be transferred by a mere delivery of the instrument. Under our statute the owner and holder of any negotiable instrument may institute suit in his own name to recover the amount due thereon. Article 307 provides, "Any person to whom any of the said negotiable instruments may have been assigned may maintain any action in his own name which the original obligee or payee might have brought." Our Supreme Court has also settled this case adversely to appellants' contention. Word v. Elwood, 90 Texas, 130; Prouty v. Musquiz, 94 Texas, 90.

Appellee in his brief suggests that this case was appealed mainly for delay, and asks that he be awarded the ten percent damages that may be allowed in cases where appeals are resorted to for delay only. Appellant, in an amended brief which was filed by permission of the court upon his motion, replying to the appellee's suggestion and demand for the ten percent damages, insists that this opens up the entire record and authorizes this court to consider all errors, whether assigned or not, which may be gathered from the face of the record. They then direct attention to the allegations in the original petition and the proof offered in the court below upon which judgment was rendered in favor of appellee for the ten percent as attorney's fees specified in the note. That portion of the appellee's petition referring to attorney's fees is as follows; after describing the note, it says, "and providing for ten percent attorney's fees if suit should be instituted on said note or if placed in the hands of an attorney for collection. That said note is now long since past due and unpaid, and the defendants, and each of them, though often requested so to do, have wholly failed and refused, and still fail and refuse, to pay the same, principal, interest and attorney's fees, or any part thereof, to this defendant's damage (meaning plaintiff's) in the sum of $400. That because of the failure of the defendants, and each of them, to pay said note at its maturity, the plaintiff has been compelled to place the same in the hands of Gaines & Corbett, practicing attorneys of Bay City, Matagorda County, Texas, and to institute suit thereon in order to enforce its collection. That by reason thereof defendants, and each of them, became liable to and promised to pay to plaintiff an additional sum of ten percent of the principal and interest due on said note, as attorney's fees."

As is shown in the preceding statement of the facts in this case, the evidence offered by the appellee upon the trial in the court below consisted of his own testimony as to who constituted the Bay City Bank, described as the payee in the note, its dissolution and the method by which he acquired ownership, and the note itself. With this he rested his case and asked for judgment for principal, interest and the stipulated attorney's fees. Appellants contend that both the allegations in the plaintiff's petition relative to that portion

of the note sued on providing for attorney's fees, and the proof submitted in support thereof, were insufficient to warrant a judgment in favor of plaintiff for such fees.

In view of the fact that there has been some misapprehension among members of the profession regarding the degree of certainty and fullness required in pleadings where it is sought to recover attorney's fees in connection with the principal sum expressed in notes and other written contracts for the payment of money, it may not be inappropriate to make a brief *resume* of the more recent decisions in this State relative to that matter, and which now appear to have established a well settled rule on the subject.

The custom, which has now become almost universal, of stipulating in negotiable promissory notes for the payment of attorney's fees in the event payment of the obligation is not made at maturity and it should be placed in the hands of an attorney for collection, or suit be instituted thereon, is not a very old one. For some length of time after its introduction into the commercial transactions of the country this particular provision seems to have been regarded as agreed amount of damages, which the debtor obligated himself to pay in case of default and if the note should be placed in the hands of an attorney for collection, or legal proceedings instituted for that purpose. It seems to have been tacitly admitted that when default in payment was made, and the holder of the note performed the conditions specified, the contract as to the attorney's fees provided for became an absolute promise to pay that sum in damages and that inured to the benefit of the holder of the note, regardless of the expense or damage the latter might have incurred or sustained in procuring the services of an attorney. Such constructions gave to this provision the character of liquidated damages. Under this construction it was generally deemed sufficient proof to authorize a recovery of all the attorney's fees to merely introduce in evidence the note sued on, and but little attention was paid to the allegations of the petition. If it were alleged that the note sued on provided for attorney's fees on the conditions stated, and that it had been placed for collection or suit filed, as the case might be, the sufficiency of such allegations to authorize a recovery of the attorney's fees generally went unchallenged.

The nature of this provision in notes passing as negotiable instruments began to receive judicial attention when the question was raised as to its effect on their negotiability. It was suggested that the incorporation of this ancillary contract introduced such an element of uncertainty in the instrument as destroyed its negotiable character, and the courts in some jurisdictions sustained this view. The raising of this question in that manner called for a judicial construction and gave rise to many conflicting decisions among the different State courts. Some held that this provision in notes was in the nature of a penalty and was void; others that it was liquidated damages and, upon the happening of the contingency provided for, became absolute and inured to the exclusive benefit of the owner of the note. Still others held that it was a mere

subterfuge for the collection of an usurious rate of interest and was, for that reason, void.

As to the effect such provision, under the various constructions, had upon the negotiable character of the instrument in which it was incorporated, there was also great diversity of opinion; some holding that it absolutely destroyed its negotiability, while others took a contrary view. In the case of Hamilton Mill & Gin Co. v. Sinker, 11 S. W., 1059, our Supreme Court, in discussing that question in the same connection, uses language tending to show its opinion of such provisions and their real office. It there said: "The agreement to pay the expense of collection in the event the note is not paid at maturity, does not change the fact that the sum to be paid when due is fixed and unconditional. Costs are always recoverable when suit is to be brought, and this is a contingent liability. The stipulation for attorney's fees is no more." While this ruling was primarily for the purpose of determining the effect the provision for the payment of attorney's fees had upon the negotiable character of the note, it also indicated the opinion of the court as to what the contract was intended for.

In Luzenburg v. Bexar B. & L. Association, 9 Texas Civ. App., 261, the Court of Civil Appeals of the Fourth District, in passing upon a similar provision in a note, is more explicit and carries the doctrine further. In speaking of the provisions in the note relative to attorney's fees, it says, "Such provisions are upheld on the principle of indemnity to the holders of the notes against the expense of legal services. As plaintiff's contract with the attorney requires payment of only part of the fee provided for, such contract inures to the benefit of the makers of the note and will limit the amount of the recovery on account of attorney's fees. (Citing Kennedy v. Richardson, 70 Ind., 528.) Any other view would require us to hold that the Association, which is already receiving twelve percent interest per annum, could, by contract, secure a still greater sum for the use and detention of its money. If we affirm the judgment in this particular we would aid the creditor to get, not for services rendered by it or its attorneys, but from the bare fact of default a greater compensation for the detention of its money than is permitted. (Barton v. Farmers & Merchants Natl. Bank, 122 Ill., 352, 13 N. E., 503.) As it is shown by the evidence that only a part of the ten percent would go to the attorney, without disclosing what part of it, it was error to include in the recovery the entire ten percent." In this case the Supreme Court refused a writ of error. That fact, in connection with the further fact that the decision of the question there passed on, was a very material issue in the case, is to us evidence that the ruling there announced met with the approval of the Supreme Court.

In Hammond v. Atlee, 15 Texas Civ. App., 267, the same ruling is made, and Barton v. Bank quoted with approval. In this case a receiver had in his hands for collection notes which provided, in addition to a certain rate of interest, ten percent as attorney's fees in case they were collected by law or placed in the hands of an attorney for collection. In order to obtain the benefit of a

portion of those fees the receiver entered into a contract with another attorney whereby they were to divide the fees upon a recovery of judgment therefor, the associate attorney receiving one-half and the receiver the other half. This fact, when presented to the court by a proper pleading, was made the basis of a judgment requiring the receiver to refund the one-half of the attorney's fees which he had retained for his portion. The court said: "The question now is, were appellants entitled to the abatement of five percent of the attorney's fee? The terms on which Atlee (the associate attorney) rendered his services were private, existing only in the knowledge of the plaintiff, Tarver (the receiver), and himself; and through their silence or suppression of the matter, defendants were deprived of their opportunity to defend against one-half of the stipulated attorney's fee; therefore they bring themselves within the rule indicated in the cases above cited. This being a direct one in its nature, the court having the power to extend the relief sought, we conclude that it should be granted." Accordingly, it was adjudged that the appellant should be taxed only with the amount of fees actually contracted to be paid to Atlee, and that whatever the difference was between that and the sum stipulated in the note would inure to the benefit of the debtor. In that case the writ of error was also refused by the Supreme Court.

In Dunovant's Estate v. Stafford & Co., 36 Texas Civ. App., 33, in which the same question was involved, suit had been instituted by attorneys representing creditors of the estate of Dunovant on notes due from that estate providing for ten percent attorney's fees. The testimony showed that under the contract between the plaintiff and her attorneys the latter were to receive as compensation for their services the full amount of the attorney's fees stipulated to be paid in the notes. Objection was raised upon the trial as to the sufficiency of the evidence to sustain the allegations in the petition, the only question presented being that the trial court erred in sustaining the plaintiff's exceptions to defendant's plea that the contract for attorney's fees, being a contract for indemnity, plaintiff was only entitled to recover on that contract an amount sufficient to reasonably compensate their attorneys for the services necessary to be rendered by them in the collection of the notes. The Court of Appeals stated that this exact question had not theretofore been presented, but sustained the judgment of the trial court. It seems that in this case the question of the reasonableness of the attorney's fees was the one principally in issue. The court decided that the amount for attorney's fees, having been stipulated in the note, was conclusive as between the parties as to reasonableness, in the absence of some showing that they were placed at that sum through fraud or by mistake. It also affirmed the ruling of the court in the two cases which we have just before referred to, holding that the provision in a promissory note for the collection of attorney's fees is a contract for indemnity, and that that rule might now be considered as established in this State. To the same effect is Robertson v. Holman, 36 Texas Civ. App., 31, where the Dunovant case is referred to and approved.

In Texas Land & Loan Co. v. Robertson, 38 Texas Civ. App., 521, another suit had been brought against the estate of Dunovant for $70,000, the notes providing for ten percent attorney's fees in case they were placed in the hands of an attorney for collection. The appellant in that case sought to recover the ten percent stipulated in the notes. The original suit had been brought against the estate, through attorneys, to establish the claim. The administrators allowed only a part of the attorney's fees and resisted the claim for the full amount of the attorney's fees, on the ground that the contract for the payment of said fees was a contract for indemnity, and appellant, not having agreed with its attorneys as to the amount to be paid for their services in collecting the notes, would only be liable to them for the reasonable value of such services, and therefore could only recover of the estate that sum. The evidence introduced upon the trial showed that $1500 was reasonable compensation for such services, and that there had been no agreement between the appellant and its attorneys as to their compensation for collecting the notes. Judgment was rendered by the court below in favor of the appellant for the principal and interest due on the notes and for the sum of $1500 only as attorney's fees. If the full amount of the attorney's fees in this case had been allowed they would have aggregated over $7,000, as we infer from the principal sum mentioned in the note and the interest that probably had accrued. The only question involved in this case was the correctness of the judgment for the attorney's fees. After reviewing some other decisions, the court said, "While the refusal of the writ of error does not necessarily indicate that the Supreme Court approved the grounds upon which our opinion in the case was based, as stated in that opinion, we think the rule that the stipulation in a note for the payment of attorney's fees is a contract for indemnity and not one for the payment of agreed damages, is settled by the decisions of this State. . . . We think it logically and necessarily follows from this rule, that where no agreement has been made between the holder of the note and the attorneys employed by him to collect, the holder could only recover on the note such amount as his attorney could recover from him for his services. In such case the attorney could only recover the reasonable value of his services, and *that* should be the measure of the recovery which the holder of the note could obtain against the maker."

The last case to which our attention has been directed is Bolton v. Gifford & Co., 45 Texas Civ. App., 140, in which the Court of Civil Appeals of the First District reaffirms all of the cases which we have before referred to, and possibly extends the doctrine somewhat further. In that case the court says, "The point made is, that the stipulation for attorney's fees is a mere contract for indemnity, and that it therefore devolved on appellees to allege and prove either that they had so contracted with or had so paid their attorneys; in which event the defendant might be estopped to deny the reasonableness of the sum fixed by the contract; or else that the sum paid or promised was reasonable. That such stipulations are

merely contracts for indemnity seems at least fairly well settled in this State. (Quoting authorities.) In enforcing contracts of indemnity it is the general rule that the plaintiff must allege and prove the extent to which he has been damnified, thus giving the court a basis for a judgment. It was held by this court in Dunovant v. Stafford, that the maker of such note 'would be estopped to say the holder was not justified in obligating himself to his attorney for the sum named in the note. . . . Here the allegation is simply that the holder had placed the notes in the hands of an attorney for collection. The holder is not alleged to have acted on the faith of the ten percent stipulation; so there can be no estoppel. On the face of the petition, he has been damaged by the default no more than he will owe his attorney on a *quantum meruit* and there is no basis in his plea for ascertaining that amount. We think the exception should have been sustained."

It is true that in the case of Sturgis National Bank v. Smith, 9 Texas Civ. App., 540, the Court of Civil Appeals of the Fifth District seems to have rendered a decision somewhat at variance with those here quoted. In that case it was the evident purpose of the court to hold that the attorney's fees provided for in notes of the character now under discussion, were intended as liquidated damages; and, acting upon that construction, it was there decided that if the plaintiff obtained the service of an attorney free, it was a matter about which the defendant could not complain and inured to the benefit of the plaintiff solely. Quite a number of authorities are cited to support the proposition, but none of them seem to justify the length to which that opinion went. It is probable that at that time the peculiar nature of this clause in such contracts had not been fully discussed and was not so thoroughly understood by the courts as it has come to be since then.

Mr. Daniel, in his work on Negotiable Instruments, sec. 62a, in speaking of notes containing those provisions, says: "Such instruments should, we think, be upheld as negotiable. They are not like contracts to pay money and to do some other thing. They are simply for the payment of a certain sum of money at a certain time; and the additional stipulations as to attorney's fees can never go into effect if the terms of the bill or note are complied with. They are, therefore, incidental and ancillary to the main engagement, intended to assure its performance and to compensate for the trouble or expense entailed by its breach."

There is language used in the case of Walker v. Tomlinson, 44 Texas Civ. App., 446, by the Court of Civil Appeals of the Third District that would indicate that it construed such clauses providing for the payment of attorney's fees, as liquidated damages. But in that case there did not seem to be any question raised as to the sufficiency of either the pleading or the proof upon that issue; in fact, the court disposed of the case entirely upon other grounds, and, as we think, merely intended to hold that when attorney's fees are provided for in a note and payment of a part is made after the note is sued on, or placed with an attorney for collection, that fact

did not deprive the owner of the right to collect ten percent of the full sum expressed in the note.

In Moore v. Brown, 89. S. W., 310, decided by the Court of Civil Appeals of the Fifth District, the judges divided upon that question. But even there the question was not directly presented, as in the cases we have heretofore cited as holding such provisions contracts for indemnity. The suit was an action of trespass to try title; the defendant pleaded that he had purchased the land from the plaintiff to be paid for in instalments as shown by his notes executed for that purpose. He also averred that he had fully paid for the land. However, in the alternative, he asked that in the event it should be decided that he had not fully paid all that was due on the land that he be permitted to do equity and pay the balance, and offered to do so. His notes provided for attorney's fees in the usual form in the event they were placed in the hands of an attorney for collection, or were collected by suit. It was ascertained on the trial that he owed a balance, and that balance was stated, excluding the attorney's fees. The plaintiff filed no pleadings in reply to the offer on the part of the defendant to pay this balance and retain the land. The majority of the court held that the effect of the judgment of the trial court was, that payments thereafter made by defendant would be after the filing of a suit on the notes, and such payments should include the full amount of the attorney's fees expressed in the notes. From this view Justice Bookhout dissented, holding that to authorize the recovery of attorney's fees the plaintiff should have replied to the defendant's pleadings offering to do equity, by pleading the stipulations in the note for attorney's fees and such facts as would entitle him to recover the same.

This case may not be considered as being in harmony with the line of decisions holding that agreements to pay attorney's fees, as usually embodied in promissory notes, are contracts for indemnity, but seems to regard them as stipulated damages. We think that not only is the weight of authority to the contrary, but the better reasoning is against such holding. It has become an established rule that a stipulation in a contract for the payment of a stated sum, in the event of a breach, and under certain conditions, should be interpreted, like all other provisions, with a view of carrying into effect the intention of the parties. (Eakin v. Scott, 70 Texas, 444; Yetter v. Hudson, 57 Texas, 613; Durst v. Swift, 11 Texas, 281; 1 Sutherland on Damages, sec. 479.)

In this case it was the evident purpose of the payors to pay attorney's fees only in the event the note was sued on, or placed in the hands of an attorney for collection. This agreement was doubtless based upon the well established custom in this country of employing the services of attorneys in the collection of overdue notes and in the institution of suits thereon, when deemed necessary, by the holder. The agreement could not, without doing violence to the terms of the instrument, be construed as a promise to pay any other element of damages resulting from the breach. This view is strengthened by the further consideration that the promise is

not conditioned merely on the failure to pay the principal sum and interest at maturity, but is further contingent upon engaging the services of an attorney. There is no contract to pay additional compensation for the detention of the money agreed to be paid; that is provided for in the rate of interest fixed. It is not for the payment of court costs, because these follow as a matter of law and are adjudged against the defaulting debtor, regardless of any special undertaking of his to that effect. It could not be considered as intended to cover such damages as might result from the personal inconvenience and annoyance imposed on the creditor from the failure to pay promptly at maturity, or the time he might lose in making a personal effort to collect the debt; that would be opposed to the terms of the agreement, and he need not suffer such loss of time for the reason that he can employ another to undertake the collection for him. The only remaining element of actual damages that could arise under breaches of this kind is that provided against—compensation for the services of an attorney.

It may also be considered a well settled rule of law in determining whether a stipulation in contracts to pay a fixed sum upon certain conditions is to be regarded as liquidated damages or a penalty, that the court should take into consideration the character of the damages sought to be provided against, and the ease or difficulty of their ascertainment. If it be found that such damages can be readily and accurately determined, either from the instrument itself or from extraneous circumstances readily accessible, the stipulation will not be treated as a fixed amount of damages, but will be construed as one intended to indemnify against actual damages only. (Durst v. Swift, 11 Texas, 281; Collins v. Betterton, 87 Texas, 442; Sun Printing Co. v. Moore, 22 Sup. Ct. Rep., 248; 1 Sutherland on Damages, sec. 283.) The employment of attorneys is always a subject of contract between the parties, and the compensation to be paid for such services as may be rendered as a result of such employment is, in most instances, determined by an express contract. Where this is not done their value is of easy ascertainment. Hence, there is no necessity for or reason why the parties should in advance agree upon a stipulated sum for damages to be paid in the event the services of an attorney should be utilized in the collection of the debt in the payment of which default has been made, except to prescribe a maximum beyond which the debtor would not be liable. This, we think, was the clear intent of the parties in the case now under consideration.

The sufficiency of the allegations and proof necessary to sustain a recovery for attorney's fees when sought in connection with that of the principal sum due on the note, is to be determined by the fulness of pleading and the quantum of proof required where the action is for such fees alone. The attorney's fees provided for form no part of the actual debt originally contracted, but are intended to relieve against some only of the consequences resulting from an effort to enforce the original obligation or compel its performance. In such a suit it would clearly be essential to allege

all of the facts necessary to show a contract to pay such fees, the contingencies, and the happening of those contingencies, upon which the agreement became absolute, such as placing the instrument in the hands of an attorney for collection, and the sum paid or contracted to be paid to the attorney for his services. As a matter of course, the proof should support all of the material allegations.

In the case now before us there is an allegation that the note, not being paid at maturity, was placed in the hands of attorneys for collection, but no evidence was offered in support of that averment. Appellee contends that one of the contingencies for payment of attorney's fees being "if suit was instituted," and there being no necessity to offer proof of that fact, he is relieved of the burden upon that issue. In this we think he is correct, because the court will judicially know that the suit was filed. But there was neither allegation nor proof as to what sum, or whether any amount, was paid or contracted to be paid by him for the services of the attorneys engaged to institute the suit. The contract being one for indemnity against that particular element of damages only, it was material to show the amount of such damages; for, as we have seen, such damages were to be measured, not by what the note stipulated, but by what was paid or contracted to be paid to the attorneys employed. The note was evidence of the contract to become liable to pay such damages, and of the maximum sum to which the payor limited his liability for such fees, but not of the sum for which in that case he was liable. If less than the full amount stipulated in the note was agreed upon between the plaintiff and his attorneys, the difference inured to the benefit of the appellants. If he were required to pay more, the excess would not be attorney's fees, but something he did not contract to pay.

In this case we think appellee failed to allege or prove facts that entitle him to recover a judgment for the attorney's fees expressed in the note sued on, and that much of the judgment rendered in his favor was erroneous. However, the amount of this excess is susceptible of exact determination, and the correction may be made in this court. It is therefore ordered that if the appellee shall, within twenty days after rendition of judgment herein, file in this court a remittitur releasing that amount, the judgment of the court below will be reformed and affirmed for the remainder; otherwise, the judgment will be reversed and cause remanded.

*Reformed and affirmed.*