BECKHAM et al. v. SCOTT et al.

(Court of Civil Appeals of Texas. Dallas. Dec. 23, 1911.)

1. BILLS AND NOTES (§ 534*)—STIPULATIONS FOR ATTORNEY'S FEES—CONSTRUCTION.

A stipulation in a note for 10 per cent. attorney's fees, in the event of suit thereon, is not a mere contract for indemnity, but binds the maker to pay the attorney's fees fixed, in the absence of plea and proof that such amount is unreasonable.

[Ed. Note.—For other cases, see Bills and Notes, Dec. Dig. § 534.*]

2. COURTS (§ 91*)—CONTROLLING DECISIONS.

A decision of the Court of Civil Appeals, not in accord with the decision of the Supreme Court, is not authoritative.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 325, 326; Dec. Dig. § 91.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

3. BILLS AND NOTES (§ 534*)—ACTIONS—ATTORNEY'S FEES.

Where a note stipulates for attorney's fees in the event of a suit thereon, it is only necessary that a suit is brought thereon to entitle the holder to recover the amount so stipulated as attorney's fees, in the absence of any effort to show that it is unreasonable; for the court will take cognizance of the fact that suit is brought, and that the note is being collected by law.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1946, 1947; Dec. Dig. § 534.*]

4. BILLS AND NOTES (§ 129*)—MATURITY—ELECTION OF HOLDER.

Where each of a series of notes provides that on the failure to pay one at maturity the whole series shall mature at the option of the holder, it is a sufficient showing of the exercise of the option to allege, in the absence of anything to the contrary, the exercise by the holder of the option, and to show that formal demand was made for the payment of the note after its maturity and refusal to pay, and that the notes were then placed with an attorney for collection; and, after formal demand and refusal of payment, a suit may be brought on all the notes.

[Ed. Note.—For other cases, see Bills and Notes, Dec. Dig. § 129.*]

5. VENDOR AND PURCHASER (§ 253*)—VENDOR'S LIEN NOTES—FORECLOSURE.

Notes executed by a purchaser for the price of land and the deed, retaining a vendor's lien, when made contemporaneously, are parts of the same contract and form one entire agreement; and the court must construe the contract to carry out the intentions of the parties, notwithstanding any clerical errors and omissions in the notes.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 637–648; Dec. Dig. § 253.*]

6. CONTRACTS (§ 147*)—CONSTRUCTION—INTENTION OF PARTIES.

A contract must be read in accordance with the intentions of the parties, notwithstanding clerical errors and omissions; and a party will be held to that meaning which he knows the other party to the contract understood the contract to mean.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 730, 743; Dec. Dig. § 147.*]

Appeal from District Court, Limestone County; H. B. Daviss, Judge.

Action by J. N. Scott against J. J. Beckham and John Keys, in which other parties were vouched in by defendant Beckham, for the purpose of settling their interest. From a judgment for plaintiff, defendants Beckham and Keys appeal. Affirmed.

Doyle & Jackson, for appellants. W. A. Keeling and C. S. Bradley, for appellee J. N. Scott.

BOOKHOUT, J. This is a suit, brought by J. N. Scott against J. J. Beckham and John Keys, to recover on three promissory notes executed by John Keys to J. N. Scott for the sum of $800 each, dated January 2, 1909, and one due January 2, 1910, one January 2, 1911, and one January 2, 1912, each bearing 8 per cent. interest per annum, interest payable annually, and each of said notes has a provision for attorney's fees, and the second and third notes provide that if the first note is not paid at maturity it matures, at the option of the holder, all of said notes. The said Scott alleges that there was a failure to pay the first note at maturity, and suit is brought on all three of said notes. Suit was filed by said Scott on March 7, 1910, for the full amount of the three notes, claiming interest and attorney's fees. On June 6, 1910, J. J. Beckham drew his check on his personal account at the bank of Prendergast, Smith & Co., of Mexia, Tex., for the sum of $992, and gave it to the cashier of the bank, and requested him to send the money to Mr. L. E. Eubank, the district clerk of Limestone county, to be deposited with said clerk for the payment of the note maturing January 2, 1910. The clerk received the letter, inclosing a deposit slip for $992, which was afterwards paid over to Mr. Keeling, one of plaintiff's attorneys, as a credit on the notes sued on. The notes were given as part of the purchase money of 195 acres of land out of the Alex Whitaker survey, in Limestone County, and described by metes and bounds in the petition, the consideration in said deed being $600 cash and the three notes here sued on; and both the deed and the notes specially retain the vendor's lien on said land to secure said notes. On January 8, 1909, said John Keys and wife conveyed said land to J. J. Beckham; the consideration expressed in the deed being $3,000 cash. On January 2, 1909, when Scott deeded said land to Keys, he was a widower, and other parties were vouched in by Beckham, for the purpose of settling their interest, if any, in the land. These parties all disclaim, and judgment was rendered as to them in favor of Beckham, and they need not be noticed further in this matter, as no complaint is made as to them by any one. On February 2, 1911, the case was tried before the court without a jury, and judgment rendered in favor of plaintiff for the full amount of the notes sued on, with all interest, attorney's fees, and costs; the judgment being for $1,790.52, principal and interest, after allowing the $992 as a credit, and for $279.05, attorney's fees on the whole amount, with a foreclosure of vendor's lien on land described in plaintiff's petition, and all cost. The court, on the disclaimer of the heirs of Mrs. Scott, rendered judgment in favor of Beckham as against them. To the judgment rendered against John Keys and J. J. Beckham, they excepted, gave notice of appeal, filed their supersedeas bond, and bring the case here for review.

[1] It is assigned that the court erred in rendering judgment for the plaintiff for $279.05 attorney's fees, being 10 per cent. of the principal and interest on the notes sued on, because the 10 per cent. attorney's

fees mentioned and specified in said notes was a contract of indemnity and not of agreed damages; and there is no allegation in the petition that plaintiff was to pay his attorneys said sum, or any other sum, for their services, or that the 10 per cent. stipulated in said notes for attorney's fees, and which forms the basis of this judgment, was reasonable; and there was no evidence, either that the plaintiff had paid his attorneys any sum for their services, had promised to pay them any amount, or that the sum stipulated in the notes, and which forms the basis of this judgment, was reasonable.

The proposition presented is that attorney's fees stipulated in notes are contracts of indemnity, and not 'for agreed damages, and before attorney's fees can be recovered the plaintiff must allege, and the proof show, that he had paid, or had agreed to pay, his attorneys the amount stipulated in said note, or that the same would be a reasonable fee for said services.

The petition alleges that each of said notes provides for 10 per cent. additional to the principal and interest, to be added as attorney's fees in the event of suit upon said notes; that the second and third maturing of said notes provide each that, in the event the first maturing of said notes should not be paid at maturity, then the holder and owner of the said notes, at his option, should have the right to declare all of said notes due and payable and collect the same; that said notes, and each of them, was given in part payment for and are secured by a vendor's lien retained upon the hereinafter-described real estate; that the first and second maturing of said notes are now long since past due, and are wholly unpaid, and, although demand has been duly made of the maker of the same, that he has heretofore failed and refused, and still fails and refuses, to pay the same, or any part thereof, except as hereinafter stated; that after said first note matured, and after said defendant had failed and refused to pay the same, the plaintiff exercised his said right to do so, and declared each of said notes due and payable, and placed them in the hands of the attorneys, whose names are signed hereto, for collection and suit; that suit is now here brought upon said notes, and each of them; and hence the provisions in said notes for 10 per cent. attorney's fees have become and are exigible. Note 2 provides: "Should I default to pay note and interest No. 1, then I agree that all three notes become due at the option of said Scott. This is note No. 2." Note No. 3 provides: "Should I fail to pay note No. 1 or No. 2 at maturity, then I agree that this note No. 3 becomes due by such default at the option of said Scott, or bearer of the said notes." The first of the notes to mature was due January 2, 1910. No effort was made to pay this note until January 12, 1910, after the suit had been

filed, and then a sufficient amount was not sent to the clerk of the court to pay the first note and the interest on the three notes due. After all efforts to make payment had ceased, demand was made upon the maker of the notes, John Keys, at his place of business, and the notes were presented to him for payment about the last of February, 1910, and payment was refused. March 17, 1910, plaintiff filed his amended petition on the notes, demanding payment thereof, and alleging that plaintiff had exercised his option to mature all of said notes. On February 17, 1911, plaintiff filed his second amended original petition, alleging the several demands for payment of the notes on March 8, 11, and 13, 1910, and alleging the maturity, by its own terms, of the second note, and the exercise by him of the option in said notes to declare all of said notes due, and seeking to recover the amount of said notes, principal, interest, and attorney's fees.

The proposition contended for by appellants cannot be sustained. It was decided adversely to them by the Supreme Court, in the case of Bank v. Robinson, 135 S. W. 372, in answering a certified question whether the court should include the 10 per cent. attorney's fees in the judgment, where it was provided for in the contract and alleged in the petition that it had been placed in the hands of an attorney for collection, and the proof showed that it was so placed; but there was no agreement with the attorney shown as to his fee. The court said: "Clearly it seems to us by the terms of the note that the provision for attorney's fees is treated, and by the parties considered, as in the nature of costs, and such promise to pay attorney's fees is fixed as a contract of indemnity. So considered, it contains an obligation of the maker of the note to pay the cost of collection, and at the same time fixes the amount thereof at 10 per cent. of such obligation. In such case, in the absence of plea and proof that such a per cent. is unreasonable and unconscionable, the court is authorized to act upon the amount of such fees as agreed upon by the parties, and enter judgment accordingly." A similar holding was made by this court in the case of Bank v. Smith, 9 Tex. Civ. App. 540, 30 S. W. 678. In that case Judge Finley, speaking for the court, said: "The different phases of the defense set up to the 10 per cent. attorney's fees constitute no legal bar to a recovery upon that portion of the contract, and plaintiff's exceptions thereto should have been sustained. The contract in express terms provided for the payment of an additional sum of 10 per cent. for attorney's fees, if collected by law, or placed in the hands of an attorney for collection. The parties had the legal right to so contract, and upon the happening of the contingency upon which the stipulated attorney's fees were made to depend the obligation became absolute, and such addition-

al sum became a part of the sum due. It would not affect the legality of the demand if it were true, as alleged by defendants, that the provision was inserted in the contract for the sole benefit of plaintiff, and not with any purpose of paying that amount for the service of an attorney. If the plaintiff could and did obtain the service of an attorney free, that fact would not relieve defendants of their obligation. For the general principles applying to this obligation, see the following authorities: Martin Brown Co. v. Perrill, 77 Tex. 199 [13 S. W. 975]; Stansell v. Cleveland, 64 Tex. 660; Simmons v. Terrell, 75 Tex. 275 [12 S. W. 854]; Morrill v. Hoyt, 83 Tex. 59 [18 S. W. 424, 29 Am. St. Rep. 630]; Kendall v. Page, 83 Tex. 131 [18 S. W. 333]; Miner v. Bank, 53 Tex. 559; Durst v. Swift, 11 Tex. 273; Yetter v. Hudson, 57 Tex. 604; Eakin v. Scott, 70 Tex. 442 [7 S. W. 777]." Such was also the holding of this court in the case of Moore v. Brown, 89 S. W. 310. See, also, Lanier v. Jones (Sup.) 136 S. W. 255.

[2] The holding of this court in the case of Hassell v. Steinmann, 132 S. W. 948, was based on the case of O'Connell v. Rugely, 48 Tex. Civ. App. 456, 107 S. W. 151, and similar holdings by the Courts of Civil Appeals, cited in that opinion, and not upon any holding by the Supreme Court. The cases cited in Hassell v. Steinmann, not being in accord with the decisions of the Supreme Court, cannot be considered authority.

[3] When a note stipulates for a certain amount to be added as attorney's fees, in the event it has to be collected by law, or is sued on, it is only necessary that suit should be brought thereon, in order to entitle plaintiff to recover the amount so stipulated as attorney's fees, where no effort is made to show such amount to be unreasonable. The court takes cognizance of the fact that suit is brought, and that the contract is being collected by law.

[4] Where it is shown, as in the instant case, that each of a series of notes provides that upon the failure to pay one at maturity the whole series shall mature at the option of the holder of them, and, upon the maturity of one, it is not paid, it is a sufficient showing of the exercise of such option, in the absence of anything to the contrary, to allege the exercise by the holder of such option, and to show that formal demand was made for payment of the first note after its maturity and refusal to pay, and that the notes were then placed with an attorney for collection; and, after formal demand and refusal of payment, a suit is then brought on all the notes.

[5] In addition to the stipulation in the first note, agreeing "to pay 10 per cent. additional as attorney's fees, should this note have to be collected by law," each of the notes expressly retained "a lien on 195 acres of land, part of the Alex. Whitaker survey, in Limestone county, Tex., deed to which from said Scott to me is of even date herewith." The deed from Scott to Keys was introduced in evidence by plaintiffs, which deed recites the notes as a part of the consideration for the deed, and specially retains a vendor's lien on the property conveyed to secure the payment of these notes. The notes and this deed having been executed contemporaneously and between the same parties, and relating to the same subject, are parts of the same contract and form one entire agreement. Campbell v. Nicholson (App.) 18 S. W. 135; Warren v. Osborne, 97 S. W. 851; Howards v. Davis, 6 Tex. 180; Dunlap v. Wright, 11 Tex. 602, 62 Am. Dec. 506; Wallis v. Beauchamp, 15 Tex. 305; Saunders v. Hartwell, 61 Tex. 688; Eppinger v. McGreal, 31 Tex. 150.

In the Campbell Case, supra, suit was brought upon a note and to foreclose a contemporaneously executed mortgage. The note did not provide for interest, but the mortgage provided for 12 per cent. interest on the debt. The trial court gave judgment for the debt and legal interest, but excluded the mortgage from evidence because of the variance between the note and mortgage, and refused a foreclosure. Upon appeal this judgment was reversed and rendered for the principal and 12 per cent. interest on the note and foreclosure of the lien.

[6] A contract must be read in accordance with the intentions and understanding of the parties, notwithstanding clerical errors and omissions; and a party will be held to that meaning which he knew the other party to the contract understood the contract to mean. While there are clerical errors and omissions in the notes, it is clear from their terms, taken in connection with the recitations in the deed from Scott to Keys, the contract evidenced a promise to pay 10 per cent. additional on the principal and interest of the notes as attorney's fees, if collected by suit. John Keys had the deed before him, as well as the notes, when he signed them, and knew that the one in express terms provided for, and the other gave, an express lien to secure the payment of 10 per cent. attorney's fees, if suit should be brought upon the contract. It was the court's duty to construe the contract so as to carry out the intentions of the parties to it. San Jacinto Oil Co. v. Ft. Worth L. & P. Co., 41 Tex. Civ. App. 293, 93 S. W. 176. The court properly construed the notes and contract.

It follows from the above remarks that the judgment must be affirmed.