FAULK et ux. v. FUTCH et ux.

No. 11783.

Court of Civil Appeals of Texas.
San Antonio.

March 10, 1948.

Rehearing Denied April 7, 1948.

Maynard F. Robinson, of San Antonio, for appellant.

Al M. Heck, Park Street, Carl Wright Johnson and Nat L. Hardy, all of San Antonio, and Phinney, Romick & Hallman, of Dallas, for appellee.

MURRAY, Justice.

This suit was instituted by E. W. Faulk and wife, Olivia Faulk, against J. S. Futch and wife, Thelma R. Futch, seeking to enjoin the defendants from, among other things, attempting in any manner to interfere with the operation of Airline Freight Line, Inc., a common carrier motor freight line, by taking physical possession of its operation, equipment or physical properties. A temporary injunction was issued, but upon final hearing the temporary injunction was dissolved and a permanent injunction was refused.

Defendants answered by general denial and special answer, and also filed a cross-action for the balance alleged to be due upon a promissory note in the principal sum of $33,000.00 dated June 14, 1946, and signed by plaintiffs.

This note, by its expressed terms, was payable to defendants in San Antonio, Bexar County, Texas; $1000.00 on September 14, 1946, and $250.00 on the 14th day of each succeeding month for a period of fifteen years. It is further provided that "in the event any default is made in the payment of any installment of principal or interest hereon, or any part thereof, when due, such default shall, at the option of the holder, at once mature the whole of this note." The note was secured by the pledge of 51% of the stock of Airline Freight Line, Inc., and five shares of stock in H. & A. Truck Lines, Inc. The pledge agreement provided: "In the event of any default in the payment of principal and interest, or any part thereof, when due on said note for $33,000.00, hereinabove described, the holder, or holders, is authorized and empowered, without either demand, advertisement or notice of any kind, to sell at public or private sale, the security then held by said holder, or holders in pledge hereunder, and deliver same to the purchaser or purchasers thereof, and to receive the proceeds of sale. Said holder, or holders, to have the same right to purchase at said sale as a stranger."

R. T. Herrin, who was the owner of the remaining 49% of the capital stock of Airline Freight Line, Inc., intervened in the case and asked that a receiver for the freight line be appointed.

The trial was before the court without the intervention of a jury and resulted in judgment, first, that plaintiffs and cross-defendants take nothing by reason of their suit for injunction and the temporary injunction theretofore issued be dissolved; second, that the cross-plaintiffs recover from cross-defendants all right, title and interest in and to the pledged stock and rights accruing to them by reason of the ownership, which ownership was acquired by virtue of a sale of said stock to said cross-plaintiffs for the sum of $15,000.00, paid by a credit upon an indebtedness and under the terms of a valid pledge agreement, which said sale was made on the 28th day of February, 1947, in Bexar County, Texas, and all other relief prayed for by cross-plaintiffs was denied, including cross-plaintiffs' prayer for a deficiency judgment; third, that the receivership prayed for by intervenor be granted.

From this judgment E. W. Faulk and wife, Olivia Faulk, have prosecuted this appeal and, likewise, J. S. Futch and wife, Thelma R. Futch, have prosecuted an appeal by giving notice of appeal and filing cross-assignments of error.

The controlling question here presented is whether J. S. Futch and Thelma R. Futch were entitled to accelerate the maturity date of the installment note held by them and declare the entire amount of principal due and payable.

The note itself did not contain any provision authorizing the holder or holders thereof to accelerate the maturity of the note without demand for payment or notice.

It is true that the Negotiable Instruments Act, Art. 5937, § 70, Vernon's Ann.Civ.Stats., provides that presentment for payment is not necessary in order to charge the person primarily liable on the

instrument, but where the right to accelerate the maturity of the note is optional with the holder thereof this provision does not authorize such holder or holders of a note to accelerate the maturity of a note without presentment for payment. The decisions seem to be clear that unless a note expressly provides that the maturity thereof can be accelerated without presentment for payment then such presentment is a prerequisite to acceleration of maturity. Parker v. Mazur, Tex.Civ.App., 13 S.W.2d 174, 175; Ladd v. Anderson, Tex.Civ.App., 89 S.W.2d 1041, 1052; Curtis v. Speck, Tex.Civ.App., 130 S.W.2d 348; Beckham v. Scott, Tex.Civ.App., 142 S.W. 80.

In Griffin v. Reilly, Tex.Civ.App., 275 S.W. 242, 248, it is stated: "Where the acceleration clause in a promissory note leaves it optional with the holder whether he shall declare the whole amount due upon failure to pay any installment of principal or interest, such holder cannot without presentment for payment, exercise his option to declare the whole amount due, if no specific place of payment is expressed in the note, until it has been presented to the payer at the latter's known place of business. Bardsley v. Washington Mill Co., 54 Wash. 553, 103 P. 822, 132 Am.St.Rep. 1133; Beckham v. Scott, Tex.Civ.App., 142 S.W. 80."

██ It is true that the collateral agreement contained a provision that the pledged stock could be sold without demand or notice in case of default, but this is not an agreement that the maturity date of the note can be accelerated without demand for payment.

██ The sale of the entire pledged stock for $15,000.00 can only be justified upon the theory that the holders of the note were legally entitled to accelerate the maturity of the note. It is true that on February 14, 1947, there were two installments of $250.00 each, due and unpaid, but before the purported sale of the stock was made, on February 28th, checks for both of these installments had been received by appellee Futch at his home in Seguin, Texas, and, furthermore, a delinquency of $500.00 would not justify the sale of $15,000.00 worth of stock. The stock certificates were easily divisible, and only an ample amount of the stock should have been sold to cover the amount due. In fact, there is no contention that the sale of the entire pledged stock could be justified on any other theory than upon the right of appellee Futch to accelerate the maturity date of the note. The note was payable in San Antonio, Bexar County, Texas, but no address was given at which payment could be made. Appellee Futch resided at Seguin, Guadalupe County, Texas, and did not maintain a place of business in Bexar County. Under such circumstances the note was payable at appellant's place of business in San Antonio, Bexar County, Texas. Parker v. Mazur, Tex.Civ.App., 13 S.W.2d 174; Art. 5937, § 73, Par. 3, Vernon's Ann.Civ.Stats.

██ The evidence shows that on February 14, 1947, the January installment was some thirty days past due and the February installment became due on that day. Appellee Futch called on that day at the place of business of appellant, but their evidence is at variance as to what was said between them at that time. Appellee Futch says that he demanded payment of both the January and February installments and that appellant Faulk told him he did not have the money and could not make payment. Appellee does not say that he presented the note, as is required by the Negotiable Instruments Act, Art. 5937, § 74, Vernon's Ann.Civ.Stats. However, if appellant told him that he did not have the money and could not make payment and did not demand that the note be presented, Futch was not required to present the note. On the other hand, according to the testimony of appellant Faulk, appellee did not demand payment, but told him that he did not need the money, and when he did he would come by and get the check. Appellant further testified that he was ready, able and willing to make payment at all times, and that whenever appellee asked for his check he always received it. This statement was supported by appellant's bank statement showing sufficient funds in the bank from which payment could have been made.

From this testimony the trial court could have found either way. In other words, he could have found that demand for payment was made or that it was not made.

The trial court, in his decree, made the following general findings of fact: "That the * * * facts are against the plaintiffs and cross-defendants on all matters alleged in their petition, * * *."

Plaintiffs and cross-defendants, who are appellants here, had alleged in their petition, among other things, that:

"On each and every due date, up to and including January 15, 1947, and at all times thereafter, plaintiffs were ready, willing and able to pay to the defendants said installments of Two Hundred Fifty ($250.00) Dollars, as they matured in San Antonio, Bexar County, Texas.

"* * * on or about the 17th day of February, 1947, that they mailed a check in the sum of Two Hundred Fifty ($250.00) Dollars, payable to the order of J. S. Futch and drawn on the Mission City Bank of San Antonio, Texas, and that check was duly placed in the mails as of that date without demand and without the said J. S. Futch or his wife, Thelma R. Futch, defendant herein making a call upon the plaintiffs for same.

"On or about the 25th day of February, 1947, and without any demand or presentment having been made in San Antonio, Bexar County, Texas, the plaintiffs mailed a check to Seguin, Texas, Guadalupe County, to J. S. Futch in the sum of Two Hundred Fifty ($250.00) Dollars, drawn on the Mission City Bank in payment of the February installment."

In support of these allegations E. W. Faulk testified that while J. S. Futch called at his place of business in San Antonio on January 15, 1947, and February 14, 1947, he did not make any demand for payment for the two installments then due, but, on the contrary, told Faulk that he would call for a check when he wanted his money. J. S. Futch contradicted this testimony by saying that he did make demand for all past due installments.

When the trial judge found that the facts were against the plaintiffs and cross-defendants on all matters alleged in their petition, he found, in effect, that demand for payment of the delinquent installments was made in San Antonio, Texas, before the maturity of the note was accelerated. If appellants were not satisfied with this general finding against them they had the right to request special and specific findings of fact.

■ The January and February installments of $250.00 each, being due and demand for payment having been made at appellant's place of business, appellee had a legal right to exercise his option of accelerating the maturity of the note and, having done so, to sell the collateral security.

■ The trial court properly granted the receivership prayed for by intervener. There was evidence to show that the Freight Line was not being properly managed and lost money every month except one, under appellant's management, that a large number of checks were being held without payment, due to the fact that the company did not have sufficient funds on hand to pay them. Appellant E. W. Faulk was being paid a salary of $500.00 per month, although he was holding a full time job with Alamo Iron Works. When these facts are considered, along with the fact that appellants and appellees were having a controversy as to the ownership of 51% of the capital stock of the company, and as to who were the duly elected officers and manager of the company, the trial court had grounds to find there was a necessity for the appointment of a receiver.

We sustain appellees' cross-assignment that the trial court should have rendered judgment in their favor for the full amount of the note. The trial court, by a general conclusion of fact, having found, in effect, that appellees had a legal right to exercise their option and declare the entire amount of the note due, erred in denying appellees judgment for the full amount of the note.

Accordingly, the judgment will be reformed so as to allow appellees recovery for all sums due on the $33,000.00 note, after deducting the amount of payments made and the credit of $15,000.00 allowed for the sale of the pledged stock and, as

thus reformed, it will be affirmed. Costs to be taxed against appellants.

Our former opinion in this cause, dated February 4, 1948, will be set aside and withdrawn and this opinion substituted in its place and, likewise, our judgment based upon our former opinion will be set aside and held for naught.

Reformed and affirmed.