CHARLES W. GLIDDEN *vs.* GEORGE B. CHAMBERLIN & another.

Suffolk.    December 2, 1896. — February 23, 1897.

Present: FIELD, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Promissory Note — Corporation — Lex Loci Contractus — Evidence — Want of Notice to Indorser of Dishonor — Waiver of Notice — Knowledge by Indorser of Omission of Notice — Agreement after Maturity for Payment of Usury.*

In an action against the second indorser of a promissory note made by a corporation, the note is rightly admitted in evidence. The indorsement admits the signature and capacity of every prior party, and this includes the existence and capacity of the corporation.

If a promissory note made in another State is sold here by the holder, who indorses it here, the contract is governed by the law of this Commonwealth, and, in an action on the note, by the buyer against such indorser, the law of the other State relating to usury is inadmissible in evidence.

Where the indorser of a promissory note, who has not had due notice of the dishonor of the note, makes an unqualified promise to pay it, a waiver of such notice will be established, if, in an action on the note, there is evidence which will warrant a finding that he knew that no notice had been sent to him when the promise was made.

It is not necessary, in an action against the indorser of a promissory note, to show that he knew that he was released from liability for want of due notice of the

dishonor of the note. It is enough if he knew the fact that no notice had been sent to him, without knowing the legal effect of such omission.

In an action upon an agreement by the second indorser of a promissory note, made with the holder after its maturity, to pay interest thereon at a certain rate so long as the note should remain unpaid, there was evidence tending to show that the plaintiff, to whom the note was sold by the second indorser before maturity, and four months before the agreement sued on, agreed as a part consideration for such agreement to go to another State where the note was made, and undertake to bring suit against the maker and the first indorser, and use his best efforts to collect the note. *Held*, that evidence that, at the time the plaintiff bought the note, he kept it in his possession for several days, and agreed to look up the responsibility of the maker, and did so, and said that he was all right and he would take the note, was properly excluded.

If the indorser of a promissory note executes, after its maturity, an agreement to pay the holder of the note interest at a higher rate than six per cent so long as the note shall remain unpaid, in an action for breach of the contract the plaintiff may recover the stipulated rate of interest to the time of the trial.

Evidence of circumstances or of conversations between the holder and the second indorser of a promissory note after its maturity, which are equivocal in their character, and which do not import a clear admission of liability or amount to a distinct promise to pay, and are consistent with the view that the indorser was merely seeking to avoid or postpone a suit against himself, is not sufficient, in an action on the note, either to prove actual notice to him of the dishonor of the note, or a waiver of such notice; and a subsequent written agreement by him to pay the holder a certain rate of interest so long as the note should remain unpaid has no greater effect.

That the indorser of a promissory note was ignorant of the fact that a demand for payment had been made upon the maker is immaterial, in an action against the former on the note; and the fact that he knew that he had received no notice of the dishonor of the note is sufficient to warrant a finding that he knew that no notice had been given to him.

CONTRACT, against George B. Chamberlin and Samuel W. Spofford, in two counts. The first count was upon a promissory note for $2,500, dated at New York, February 16, 1893, payable in four months after date to the order of James Boys and Company, at a bank in New York, signed "Enterprise Mining & Transportation Co., Robt. J. Boys, Treas.," and indorsed by the payee and by the defendants. The second count was upon an instrument dated July 8, 1893, and signed by the defendants, reciting that, "in consideration of one dollar and other considerations" to them paid by the plaintiff, the defendants promised to pay him, "at such time as he may demand it, interest at the rate of two per cent per month on and after June 16, 1893," on the note declared on in the first count, "so long as said note or any part thereof shall remain unpaid," and further agreed to pay any expense which the plaintiff should sustain in attempting to col-

lect the note from the maker or the first indorser, "including attorneys' fees and travelling expenses." The answers, among other defences, contained a special denial of the genuineness of all the signatures to the note, and of the incorporation of the maker of the note, and demanded proof of the same.

Trial in the Superior Court, before *Blodgett*, J., who allowed exceptions alleged by both parties, in substance as follows.

The note was deposited by the plaintiff in a bank in Boston for collection, and demand for the payment of the note was seasonably and properly made in New York, where it was payable. The defendants admitted the genuineness of their signatures on the back of the note, and thereupon the plaintiff offered the note in evidence, and the defendant Spofford objected, on the ground that the signature of the other parties and the maker of the note had not been proved or admitted, and also that the incorporation of the maker of the note had not been proved, but had been specially denied and demanded to be proved, but the judge admitted the note in evidence; and the defendant Spofford excepted.

The plaintiff also put in evidence the original notarial certificate attached to the note, which recited that, on June 19, 1893, at the request of a certain bank, the notary presented the note to one of the tellers of the bank where it was payable, and demanded payment of him, which was refused, whereupon the note was protested.

The defendant Spofford contended that this did not show any notice to him of the non-payment of the note; and the plaintiff introduced the evidence of Jesse M. Gove, attorney for the plaintiff, who testified that, within ten days after the note in suit had become due, he saw the defendant Spofford and told him that he had the note, and that he wanted it paid; that Spofford said that he would have to see Chamberlin; that Gove told him he had seen Chamberlin, who said he had better see Spofford; that Spofford said that he could not pay it then; that Gove said, "Mr. Glidden said that you told him that you would pay it when he came and saw you after it had been protested, and he wants his money"; that Spofford replied that he would see Chamberlin and see what they could do; and that Gove did not see Spofford again for some time, when

he had a further conversation, and finally told him that he should sue him.

The witness also testified that, after the note became due, he communicated with both Spofford and Chamberlin; that Chamberlin came in first, and the witness told him that he had this note from the plaintiff and that he wanted it paid; that Chamberlin said he could not pay it then; that he saw Chamberlin almost daily, and that Chamberlin said he could not raise the money at that time, that he had tried to but could not, that Spofford would not help him any, and that he would do what he could, and then said, " Why don't you go to the makers and first indorsers? they are perfectly good "; that he said, " We don't propose to go to New York to get this money when we can get it out of you two, who are good here, and if we have got to be to any expense in this matter we are going to have the expense here where we can have it for the smallest possible amount"; that Chamberlin requested him to wait before beginning a suit, and he replied that he could not wait any longer; that Chamberlin said, " We will pay a fair rate of interest," and asked him to see what the plaintiff would take; that he saw the plaintiff and then saw Chamberlin again, and told him that they would give him a little time provided he would pay two per cent a month; that Chamberlin then said he would go and see Spofford, and thought that Spofford would agree to that; that later he came back and said that Spofford would agree to pay two per cent a month and sign an agreement to that effect, and also said, " We want you to go to New York and go for those parties there "; that Gove said, " If we go to New York you will have to pay the expenses that will be attached to it, including counsel fees, travelling expenses, and other expenses that might be attendant upon it"; that he said they were willing, and the witness thereupon drew up this agreement; and that Chamberlin took the agreement and brought it back signed on the same day or the next.

The plaintiff testified that, immediately after the note had been protested and the protest sent to his office, he went to the office of Spofford, who was out; that he left a card there requesting him to see the plaintiff at once, as his note had gone to protest; and that he came within an hour, and seemed surprised

that the note had not been paid, and said that he, the plaintiff, need not worry about it, that he would pay it " to-morrow or next day." On cross-examination, the plaintiff further testified that Spofford said he would pay the note either the next day or the day after, and not to worry about it ; and that he was positive that this was the conversation, which was probably within four days after the note was due.

The defendant Spofford testified that the plaintiff told him the note had not been paid, and he was surprised to think it had not been ; that he only told the plaintiff that he would see Chamberlin and send Chamberlin up to see him ; that he did not promise to pay the note ; and that he received no notice of protest, and the first and only thing he knew about the note being unpaid was when the plaintiff told him.

Except as before stated, there was no evidence tending to show that the defendant Spofford, at the time when the plaintiff claimed that he promised to pay the note, or at any time before the trial, knew that he had been released by reason of no notice being given him ; and there was no consideration shown for any promise to the plaintiff to pay the note, unless it may be inferred from the former consideration, namely, the original purchase of the note by the plaintiff, as hereinafter recited.

The evidence tended to show that, some time in March, 1893, the plaintiff bought the note of the defendant Spofford for the sum of $2,333.33. The note was indorsed to the plaintiff in this Commonwealth, where he and both of the defendants then resided, and continued to reside to the time of the trial.

The defendant Spofford offered in evidence the statutes and the code of New York under the title of " Interest," it appearing by said statutes that where interest greater than six per cent is charged or in any manner reserved on any note, contract, or obligation, such note, contract, or obligation is void. But the judge excluded the same ; and the defendant excepted.

Under the second count of the declaration the defendant Spofford introduced evidence tending to show that the plaintiff had agreed, as a part consideration of the agreement set out in that count, that he would go to New York and undertake to bring suit on the note, and would use his best efforts to collect the note, and apply the proceeds so far as applicable thereto.

The evidence of the plaintiff tended to show that there was no absolute agreement of that kind ; that there was a talk about a suit in New York, and the plaintiff had the right, if he saw fit, to institute such a suit and prosecute it ; that, if he did so, the defendants were to pay the entire expenses of the same ; that it was optional with the plaintiff whether to bring such a suit or not ; that, after some investigation of the matter in New York, he informed the defendants, through his counsel, that he would not begin proceedings unless they first advanced the sum of $500 on account of costs and counsel fees ; that they declined to raise that amount of money, or any other sum except $50, which was in part payment of a bill of $82 for expenses already incurred in the investigation ; and that the balance of the bill had never been paid.

It appeared in evidence that the plaintiff did not endeavor to collect the note of the maker thereof, or of the first indorser, by suit in New York.

The defendant Spofford offered evidence tending to show that, at the time the note was purchased of him by the plaintiff, he held the note in his possession for several days, and agreed to look up the responsibility of the makers, and did so, and said that they were all right and perfectly good, and he would take the note. The judge, on the plaintiff's objection, refused to admit this evidence ; and the defendant Spofford excepted.

The defendants requested the judge to rule as follows :

" 1. There is no evidence of protest as against the defendants, or that they received legal notice of the dishonor of this note. 2. In order that the plaintiff may recover against the defendants as indorsers, the plaintiff must show that they were legally notified of its dishonor or non-payment by the maker. 3. The evidence of the notarial certificate, and the facts therein recited, are not sufficient evidence to entitle the plaintiff to recover against these defendants. 4. In order that the plaintiff may recover as against the defendants, the plaintiff must show dishonor and notice of non-payment to these indorsers by the next mail. 5. In order to show a waiver of protest and notice, the plaintiff must show that the defendants knew that they were released for want of notice, and that, knowing that, they promised to pay the note. 6. In order to show a waiver of

protest and notice, the plaintiff must show that the defendants knew that they were released for want of notice, and that, knowing that, they for a valuable consideration promised to pay the note. 7. If the plaintiff charged, reserved, and took more than six dollars upon the one hundred dollars for one year, upon the note in suit, the note is void, and the plaintiff cannot recover against the defendants. 8. The note in suit being a note dated in New York, and payable in the city of New York, is to be governed by the laws of New York."

The judge refused to rule as requested, except as appears in the instructions given, which, among other things, were as follows:

"What liability did these defendants incur as indorsers of this note at the time it was negotiated and transferred to the plaintiff? Their liability, I have no doubt you know very well, was not to pay this note at all events; it was not the liability of a maker who promises absolutely to pay a sum to the person who is the legal holder of a note, but it was a conditional liability; it was a promise on their part to pay the note to the plaintiff, provided when the note became due payment was demanded at the bank where it was made payable, and payment was there refused, and these defendants were seasonably notified of the demand made upon the maker, and the maker's refusal to pay.

"One of the main defences, and, so far as the first count is concerned, substantially the only defence you will need to consider, is that while it appears in the case from the notarial certificate, which is not controverted, that the demand was seasonably and properly made in New York, at the bank where the note was payable, for the payment of the note, yet that no proper notice, such as the law required, was ever given to these defendants, or either of them, and therefore that the action cannot be maintained against them. The burden is upon the plaintiff to satisfy you that such notice was given to the defendants, or that the defendants, by their acts and by their conduct, waived the giving of such notice. There is no evidence in the case from which you would be justified in finding that the notice which the law required was given to either of these defendants.

"The right of the plaintiff, then, so far as the first count is

concerned, depends upon whether these defendants have so conducted themselves that the law will not permit them to interpose the failure to give notice to them as a defence in this suit. So far as the defendant Spofford is concerned, I instruct you, as matter of law, that there is evidence in the case which, if believed by you, will justify you in finding that Spofford waived the right to notice. You will recollect that there is evidence tending to show that Spofford, some considerable time after the maturity of the note, in conversation with the plaintiff or the plaintiff's attorney, promised unqualifiedly to pay the note. On the other hand, of course, you will take into consideration the testimony of Spofford that he made no promise to pay. You must say what the truth is, the burden being upon the plaintiff to show that such a promise was made. If the plaintiff has failed to satisfy you that such promise was made, then the plaintiff is not entitled to a verdict upon the first count against Spofford.

"Suppose you find that Spofford did make that promise, then if he made that promise with knowledge that no notice such as the law required had been given him of the non-payment of the note, the plaintiff is entitled to a verdict as against Spofford; you will be justified in finding that Spofford did have knowledge that no such notice had been given to him in view of the fact, which you may well assume to be true, that he had received no such notice."

On the second count of the declaration the judge instructed the jury, that if the plaintiff, at the time when the contract was made with the defendants upon which he relied in support of that count, promised to go to New York and endeavor to collect the note by suit against the maker and the first indorser, and failed to do so, such failure would not be an avoidance of the contract, and the plaintiff could recover the amount claimed in that count up to the time of the trial, after deducting therefrom any damages which the jury might find the defendants had sustained by reason of such failure.

To the refusals to rule, and instructions, so far as they were inconsistent with the requests, the defendant Spofford excepted.

The judge also instructed the jury that, as matter of law, upon all the evidence in the case, there could be no verdict for the plaintiff against Chamberlin upon the first count of the

494 GLIDDEN *v.* CHAMBERLÍN. [167

declaration, on the ground that there was no evidence which would justify them in finding either that Chamberlin had received notice of the dishonor of the note, or that he had waived notice thereof; and the plaintiff excepted.

The jury returned a verdict for the plaintiff as against the defendant Spofford for the full amount of the principal of the note, and, on the second count, for the plaintiff, against both defendants for interest on the note at the rate of two per cent per month from June 16, 1893, to the time of trial; and the plaintiff and the defendant Spofford each alleged exceptions.

*E. B. Hale*, for the plaintiff.

*C. F. Eldredge*, for Spofford, submitted the case on a brief.

*G. P. Wardner*, for Chamberlin.

ALLEN, J. We will first consider the exceptions taken by the defendant Spofford.

1. The note was rightly admitted in evidence. The defendant's indorsement admits the signature and capacity of every prior party. *Prescott Bank* v. *Caverly*, 7 Gray, 217. Byles on Bills, (13th ed.) 155. Dan. Neg. Instr. (4th ed.) §§ 669 *a*, 675, 676. This includes the existence and capacity of a firm; *Dalrymple* v. *Hillenbrand*, 62 N. Y. 5; and, by the same reasoning, the existence and capacity of a corporation.

2. The evidence offered as to the law of New York respecting usury was rightly excluded. The contract between the selling indorsers and the plaintiff was a Massachusetts contract, and is governed by the laws of this Commonwealth. *Williams* v. *Wade*, 1 Met. 82. *Slacum* v. *Pomery*, 6 Cranch, 221. *Lee* v. *Selleck*, 33 N. Y. 615. *Greathead* v. *Walton*, 40 Conn. 226. Dan. Neg. Instr. (4th ed.) § 899.

3. The presiding justice instructed the jury that there was no evidence from which they would be justified in finding that the notice of dishonor which the law requires was given to either of the defendants. The question remains as to the alleged waiver of such notice by a subsequent unqualified promise to pay the note, with knowledge that no notice such as the law requires of the non-payment of the note had been given to him. There is no doubt that an indorser's liability may be established by proof of an unqualified promise to pay, or other unqualified admission of liability, made after a failure to give due notice to

him of the dishonor, if he had knowledge of all material facts. *Hobbs* v. *Straine*, 149 Mass. 212. *Parks* v. *Smith*, 155 Mass. 26. The defendant Spofford now argues that his alleged promise was before he knew that no notice had been sent to him. It seems probable that this view was not presented at the trial, and that it is not now open. But, however this may be, the evidence would well warrant a finding that he then had this knowledge. He testified that he had received no notice; and from the other evidence the jury might find that the proper time for the notice to come, if it had been duly sent, had passed, especially as he made no suggestion to the contrary at the trial.

The fifth and sixth requests for instructions were properly omitted to be given in terms, because it was not necessary for the plaintiff to show that the defendant knew that he was released from liability for want of due notice of the dishonor; it was enough if he knew the fact that no notice had been sent to him, without knowing the legal effect of such omission. *Third National Bank* v. *Ashworth*, 105 Mass. 503. *Matthews* v. *Allen*, 16 Gray, 594. *Givens* v. *Merchants' National Bank*, 85 Ill. 442, 444. Dan. Neg. Instr. (4th ed.) § 1148. The rule is the same in case of a new promise by an infant after becoming of age. *Morse* v. *Wheeler*, 4 Allen, 570.

4. In respect to the special agreement declared on in the plaintiff's second count, direct evidence was introduced without objection tending to prove that the plaintiff had agreed, as a part consideration for it, to go to New York and undertake to bring suit against the maker and the first indorsers, and use his best efforts to collect the note; and the court instructed the jury that, if the plaintiff so agreed, and failed to do so, such failure would not be an avoidance of the contract, and that the plaintiff could recover the amount claimed in said count up to the time of the trial, after deducting therefrom any damages which the jury might find the defendants had sustained by reason of such failure. But the defendant excepted to the exclusion of evidence that, at the time the note was purchased of the defendant by the plaintiff, he held the note in his possession for several days, and agreed to look up the responsibility of the makers, and did so, and said that they were all right and perfectly good, and he would take the note. This evidence was properly excluded.

The note was bought by the plaintiff in March, 1893, and the agreement declared on was dated July 8, 1893. The evidence offered had no legitimate tendency to prove that at the latter date the plaintiff agreed to do the things asserted.

5. The defendant contends that the court erred in allowing the plaintiff to recover on the second count to the time of the trial. No such point was taken at the trial. But the ruling was right. *Union Institution for Savings* v. *Boston*, 129 Mass. 82. *Bowers* v. *Hammond*, 139 Mass. 360. *Lamprey* v. *Mason*, 148 Mass. 231. *Schmidt* v. *People's National Bank*, 153 Mass. 550.

We come now to the exception taken by the plaintiff in respect to the liability of the defendant Chamberlin. The only question saved is whether the plaintiff had any evidence for the jury to show that Chamberlin had received notice of the dishonor of the note, or that he had waived notice thereof.

The notarial certificate did not show any notice to either of the defendants, and there was no evidence of such notice to Chamberlin, except from his subsequent conversations with the plaintiff's attorney, and from the fact of his entering into the subsequent agreement which is declared on in the second count. These conversations included no direct admission by Chamberlin that he had received such notice, and no direct acknowledgment of liability or promise to pay. Instead of calling somebody to testify that such a notice was sent or given to Chamberlin, the plaintiff wished to ask the jury to infer this fact from the conversations and the fact of the subsequent agreement, or else to find a waiver of such notice.

A distinction is sometimes taken between evidence which will warrant an inference that due notice of dishonor was in fact given, and evidence of a waiver of the omission to give such notice. This distinction was adverted to in *Andrews* v. *Boyd*, 3 Met. 434, where the evidence was held sufficient to show a waiver, if not to warrant a finding of actual notice. The decisions which go furthest in admitting circumstances to go to the jury as evidence of actual notice have been criticised in 1 Pars. Notes & Bills, 616, and Dan. Neg. Instr. (4th ed.) § 1160. If circumstantial evidence alone is relied on, it may often be easier to establish a waiver than the fact of actual notice, but the general considerations which weigh in determining the sufficiency of such evidence are much alike in both cases.

In this Commonwealth, where one is under no existing liability upon a contract, either because the contract was made during infancy, or by reason of the statute of limitations, or of a discharge in insolvency, or because his name has been forged or signed without authority, or for want of demand or notice of dishonor to an indorser of a bill or note, and it is sought to establish a liability by proof of ratification, new promise, adoption, or admission of liability, the rule has been held with some strictness that the proof must be clear and distinct. See, as to cases of infancy, *Proctor* v. *Sears*, 4 Allen, 95; *Tobey* v. *Wood*, 123 Mass. 88; as to cases under the statute of limitations, *Weston* v. *Hodgkins*, 136 Mass. 326; *Krebs* v. *Olmstead*, 137 Mass. 504; *Custy* v. *Donlan*, 159 Mass. 245; *Boynton* v. *Moulton*, 159 Mass. 248; as to cases of discharge in insolvency, *Bigelow* v. *Norris*, 139 Mass. 12; *Kenney* v. *Brown*, 139 Mass. 345; as to cases of forgery or unauthorized signature, *Greenfield Bank* v. *Crafts*, 2 Allen, 269, and 4 Allen, 447; *Traders' National Bank* v. *Rogers*, *ante*, 315; and as to cases of indorsers, *Creamer* v. *Perry*, 17 Pick. 332; *Parks* v. *Smith*, 155 Mass. 26. An unqualified admission of liability, or a direct promise to pay, which imports such admission, is evidence of the most satisfactory kind. Evidence of circumstances or of conversations which are equivocal in their character, and which do not import a clear admission of liability, or amount to a distinct promise to pay, and which are consistent with the view that the indorser was merely seeking to avoid or postpone a suit against himself, are not satisfactory evidence either to prove actual notice or to reestablish the indorser's liability after it has ceased for want of demand or notice.

We lay no stress on the defendant's contention that he was ignorant of the fact that a demand had been made. If no demand had been made, that fact would be material, because it would release the indorsers from liability. But a fact which would not release them from liability is immaterial, and if the indorsers in this case assumed that a demand was made, they were not harmed by that assumption. We also think the evidence was sufficient to warrant a finding that Chamberlin knew that no notice had been given to him, because he knew that he had received none.

But the plaintiff's evidence fails to show an admission of liability by Chamberlin, or a new promise, with such distinctness as the law requires. His words and acts were at most equivocal, and were consistent with another hypothesis than that of an admission of liability. In *Creamer* v. *Perry*, 17 Pick. 332, there was evidence that the indorser said, " The note will be paid." The court said, " This is quite as consistent with the hypothesis, that it was a mere assertion of his expectation, that it would be paid by the promisor, as of a promise on his own part to pay it." Accordingly it was held that the plaintiff was not entitled to go to the jury. See also *Haskell* v. *Boardman*, 8 Allen, 38. Where the evidence is equally consistent with some other hypothesis than that which the plaintiff is bound to establish, his case fails. *Smith* v. *First National Bank*, 99 Mass. 605. This doctrine is often applied in accident cases. See also *Tobey* v. *Wood*, 123 Mass. 88, and *Smith* v. *Kelley*, 13 Met. 309, where it was held that there was nothing for the jury to show ratification by an infant after he came of age. In the present case, it is quite plain that the defendant disliked to be sued, and perhaps was afraid that he might be held bound to pay the note ; but upon the evidence the jury would not have been warranted in finding that he assumed the duty of paying it, or waived the notice of dishonor. All that he said or did was equally consistent with another hypothesis. See also *Hussey* v. *Freeman*, 10 Mass. 84 ; Dan. Neg. Instr. (4th ed.) § 1163, where other instances of equivocal words being held insufficient to show waiver are cited.

The subsequent written agreement has no greater effect. The promise which it contained was limited to interest.

*Exceptions overruled.*