## LADD et al. v. ANDERSON.

### No. 13147.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 29, 1935.

Rehearing Denied Jan. 10, 1936.

Leroy A. Smith, Van Zandt Smith, and R. M. Rowland, all of Fort Worth, for appellants.

Perkins & Culbertson, of Fort Worth, for appellee.

BROWN, Justice.

W. T. Ladd, B. H. Martin, Mrs. George E. Cowden, and Dr. J. W. Irion, as individual plaintiffs, and W. T. Ladd and B. H. Martin, as independent executors of the estate of W. G. Turner, deceased, brought suit in the district court of Tarrant county, against Mrs. Ella Anderson, a widow, Hub Furniture Company, a corporation, and the attorneys who represented Mrs. Anderson, alleging that Turner died testate, in January, 1933, leaving an estate in Tarrant county; that his will was therein duly probated, in which Ladd and Martin are named and have qualified and are acting as independent executors; that, in the latter part of 1928, the affairs of the Hub Furniture Company were in bad condition, and it sorely needed ·funds; that Turner had organized it, and being anxious to make it succeed, persuaded Ladd to become manager of the company, promising

Ladd that if he would accept such responsibility he (Turner) would furnish sufficient capital to successfully operate the distressed company, and that the company would not be called upon to repay such moneys advanced, until all of the debts owing by the company were paid and it should become able to pay its obligations out of its profits and earnings, and that Ladd would not be called upon to indorse any of the company's paper. That Ladd accepted the responsibility, upon such conditions and promises. That at such time the company owed, and still owes, a large amount of indebtedness which it has never been able to pay. That Turner advanced large sums to the company, aggregating about $90,000, which Turner took credit for on the books of the company. That it was agreed that 6 per cent. interest would be paid by the company monthly on such advances. That subsequent to the making of the advances, on, or about, April 1, 1929, Turner requested the bookkeeper of the company to prepare three promissory notes, payable to his order, two in the sum of $20,000 each, and one for $50,000 (which covered the advancements Turner had made), and to have same executed. That the notes were executed, but his account was not charged with them, at his suggestion, and that, at his suggestion, the notes were not entered upon the company's bills payable, and that it was not intended that the giving of the notes would terminate or modify the original agreement made as to the payment of the advances made by Turner. That one $20,000 note, dated April 1, 1929, was made to mature January 1, 1931, bearing interest from date at 6 per cent. per annum, payable on the first day of each month, after its execution, and was, by Turner, on May 1, 1929, given to his sister, Mrs. Ella Anderson; that Turner indorsed same "without recourse," and that Mrs. Anderson gave no consideration therefor. That on, or about, May 1, 1929, without other or further consideration, Turner caused the company to execute a new note in lieu of the one described, payable in the same amount, with the same terms as to interest and maturity, but naming Mrs. Anderson as payee. That there were no indorsements on such note, and same was a mere gift to Mrs. Anderson, and that the company paid her the interest, as it accrued, each and every month. That on or about December 30, 1929, at a time when Mrs. Anderson was holding and collecting the monthly interest thereon,

Turner, acting for Mrs. Anderson, requested Ladd, Martin, Irion, and Mrs. Cowden to sign their names with him, on the back of the note; that they demurred and declined to do so, but that Turner insisted and then and there stated that the signers would incur no liability by so signing, and such signatures were not requested for the purpose of creating any such liability and not intended as such, and that if any liability should thus be incurred he, Turner, would hold the signers harmless; that they indorsed the note, relying upon the representations made by Turner; that some nine months after the note fell due, Turner requested the company to execute four notes, each for $5,000, in lieu of the original note, and on October 12, 1931, the four notes were so executed, payable to Mrs. Anderson, maturing September 1, 1932, 1933, 1934, and 1935, respectively; that, at the request of Turner, plaintiffs indorsed the notes, without any consideration moving to the indorsers, and upon Turner's representations that the indorsements would create no liability against the indorsers, that such were asked solely to accommodate Turner and Mrs. Anderson and "make Mrs. Anderson feel better," but that if any liability should attach, he, Turner, would hold the indorsers harmless; that when the $5,000 note, which matured on September 1, 1932, fell due, Turner requested the company to execute a new note payable March 1, 1933, but no demand for payment had been made upon the company, or upon any indorser, by either Turner or Mrs. Anderson, and that this note was indorsed by the same parties under such circumstances and conditions as related to the prior notes.

Plaintiffs prayed for an injunction, restraining Mrs. Anderson and her attorneys from selling and transferring the notes, pending a hearing on the merits, and for judgment canceling and avoiding their indorsements on them. The temporary relief was granted.

Mrs. Anderson answered, denying all of' the allegations seeking relief upon the part of the indorsers, and at the same time filed a cross-action against the maker, Hub Furniture Company, and all indorsers, alleging that the notes and indorsements are valid and regular, and specifically pleading waiver and estoppel on the part of the indorsers, who were alleged to be stockholders in and directors of the Hub Furniture Company.

The trial was to a jury and sixteen special issues were submitted to the jury, in substance, as follows: (1st) Did Turner make the oral agreement with Ladd that in consideration of Ladd taking over the duties of general manager of Hub Furniture Company, Turner would furnish all of the moneys necessary to finance the company and that such advances were not to be repaid until all other debts owing by the company were paid? To which the jury answered, "Yes." (2d) Did Ladd, Irion, Martin, and Mrs. Cowden indorse the $20,000 note, dated May 1, 1929, at Turner's request and upon Turner's statement that such indorsements would create no liability against the indorsers? To which the jury answered, "Yes." (3d) The jury was asked to find whether the indorsers believed and relied upon Turner's statements, etc., in indorsing the note, but the jury failed to answer the issue. (4th) Did the said indorsers indorse the four $5,000 notes, in renewal of the $20,000 at the request and statement of Turner, made through Ladd, that their indorsements would create no liability against them? The jury failed to answer such issue. (5th) Did the said indorsers indorse the $5,000 renewal note under the same facts and circumstances as set out in issue No. 4? To which no answer was made. (6th) Did Turner indorse the notes solely for the benefit of his sister, Mrs. Anderson? The jury answered, "Yes." (7th) Did the $20,000 note, payable to Mrs. Anderson, have the indorsements of Turner, Martin, Irion, and Mrs. Cowden thereon, when same was delivered to Mrs. Anderson? The jury answered, "Yes." (8th) Did Mrs. Anderson agree to accept the four $5,000 notes in renewal and extension of the $20,000 note on the condition that Turner, Martin, Ladd, Irion, and Mrs. Cowden indorse them? The jury answered, "Yes." (9th) The jury found that the first maturing $5,000 note was renewed upon the same conditions. (10th) The jury found that W. T. Ladd on or about March 1, 1933, requested J. B. Hamilton (officer of a bank in whose hands the notes were placed for collection) for additional time in which to pay the note due March 1, 1933; and (11th) that B. H. Martin on or about March 1, 1933, made a similar request; and (12th) that Ladd made a similar request on or about March 7, 1933; the 13th issue asked the jury to find whether or not the plaintiffs and W. G. Turner by their acts and conduct, pri-

or to the renewal and extension of the $20,000 note, payable to Mrs. Anderson, by the execution and delivery of the four $5,000 notes, caused Mrs. Anderson to believe that they would become liable thereon as indorsers. The jury answered, "Yes." In answer to issue 14, the jury found that Mrs. Anderson would not have accepted the renewal notes and extended the debt except for such belief. Issue 15 is exactly like issue 13, except that it relates to the $5,000 note executed in renewal of the first $5,000 note theretofore executed, and the jury answered in the affirmative; and to issue 16, found that Mrs. Anderson would not have accepted the new note and extended the debt, but for such belief.

The plaintiffs filed written objections to the charge, all of which were overruled, and exceptions taken.

On this incomplete verdict the district court rendered judgment in favor of Mrs. Anderson against the Hub Furniture Company, W. T. Ladd, B. H. Martin, Dr. J. W. Irion and Mrs. G. E. Cowden, and the executors of W. G. Turner's estate, for the principal, interest, and attorney's fees provided for in the three $5,000 notes that mature September 1, 1933, 1934, and 1935, respectively, and against the said company, Turner's executors, W. T. Ladd and B. H. Martin on the last-executed $5,000 note, payable March 1, 1933; dissolved the injunction theretofore granted; directed that the judgment be first satisfied out of the company's property, the deficiency out of the other parties, as their liabilities appear under the judgment, and decreeing that all other relief prayed for by any party be denied.

The plaintiffs below have appealed and urge many assignments of error.

It cannot be said that the indorsements, by Ladd, Turner, Martin, Irion, and Mrs. Cowden, of the $20,000 note, drawn payable to Mrs. Anderson, created any liability on the part of the indorsers, in view of their pleas of no consideration. The debt was old and outstanding, and there was absolutely no consideration of any kind, character, or description, for the indorsements then made. And this is true, whether the signatures were placed on the note before, or after, it was actually delivered to Mrs. Anderson.

Mrs. Anderson is no holder in due course and paid nothing for the note. It was given to her by Turner, the original

payee, and she stands in no better position than did Turner. Under such circumstances, no finding on the part of the jury that the indorsers either did, or did not, rely upon Turner's statements, made to them to secure their indorsements upon the $20,000 note, was necessary to any determination of the rights of the accommodation indorsers, as was inquired about by issue No. 3, in so far as the $20,000 note is concerned.

■ Furthermore, there being no consideration for the indorsements, in the first instance, the indorsers cannot be held liable on any renewal note, unless a valuable consideration passed at the time of the renewal.

No such consideration is raised by the evidence. The indorsers got nothing by reason of the renewal. They were not liable on the first note, and a suit brought thereon by Turner would have resulted in a failure to recover against the indorsers. Mrs. Anderson, Turner's donee, stands in no better position than did Turner, before he gave her the note.

All parties admit that the maker of the note (Hub Furniture Company) was, when Turner made the loans to it, and at the time of the execution of the first notes, and when the renewal notes were executed, notoriously insolvent.

This being true, it cannot be said that Mrs. Anderson gave these indorsers anything of value by extending the day of payment for such a hopelessly insolvent debtor.

The record before us indicates that Mrs. Anderson has known at all times that she cannot collect the face of her notes out of the maker, because of its insolvency, and being unable, as a matter of law, to hold the indorsers, the most reasonable motive for granting the extension of time to the maker was the hope that it might recover from its financial illness to where it could pay its obligation to her.

One of the most significant of all of the undisputed facts before us is that Turner handled every angle of the transaction during his lifetime and that Mrs. Anderson neither dealt with the maker nor the indorsers until after Turner's death. Furthermore, so long as Turner lived no demand was ever made for payment of any principal, and such payment was never discussed. All this but corroborates the evidence given by the appellants.

The undisputed evidence shows that Martin, Ladd, Mrs. Cowden, and Dr. Irion indorsed the original note as an accommodation to the payee, and not to accommodate the maker.

It matters not whether the original payee was Turner, or was Mrs. Anderson, as it is clear that Mrs. Anderson is no holder, in due course, for value.

■ Accommodation indorsers may, before the instrument passes into the hands of a bona fide holder, in due course, for value, revoke the instrument. Here they brought suit to obtain such relief and enjoined the negotiation of the notes by the payee.

Fox v. Cortner, 145 Tenn. 482, 239 S. W. 1069, 1071, 22 A.L.R. 1341 quotes from the old case of Bank v. Johnson, 1 Swan. (31 Tenn.) 217, and speaks of the decision as "well reasoned, sustained by abundant authority, and has been frequently cited in other jurisdictions." First State Bank of Teague v. Hare et al. (Tex.Civ.App.) 152 S.W. 501; 8 Corpus Juris, p. 258, para. 408; 3 R.C.L.(Perm.Suppl. 2, p. 989, para. 336).

The notes, being accommodation paper, were effective only in the hands of a holder for value.

■ It is well established that the accommodated party cannot recover against the accommodation party in a suit on the note.

The undisputed evidence establishes the fact that Mrs. Anderson, the payee, was the accommodated party. King v. Wise (Tex.Com.App.) 282 S.W. 570; Central Bank & Trust Co. v. Ford (Tex.Civ.App.) 152 S.W. 700 (writ refused); Altoona Second Nat. Bank v. Dunn, 151 Pa. 228, 25 A. 80, 31 Am.St.Rep. 742; Whitwell v. Crehore, Executor, 8 La. 540, 28 Am. Dec. 141.

■ It thus appears that these indorsers were well within their rights in being permitted to introduce evidence and testimony establishing the fact that they were only indorsers for accommodation of the payee, Mrs. Anderson. Such evidence does not vary the terms of the written instrument, but goes to the defense of want of consideration.

In 6 Tex.Jur., p. 957, par. 279, it is said: "But when a recovery is sought against an accommodation party and it is contended that the plaintiff was the party accommodated or one who claims through the

party accommodated, it would seem that parol evidence is competent to prove the facts." This text cites a number of Texas cases.

The maker of the note, Hub Furniture Company, never at any time requested the indorsers to sign the notes. Turner, the original payee, according to the undisputed evidence, requested the accommodation, and it matters not whether such accommodation was for him, or for Mrs. Anderson, to whom he gave the note.

■ We are of the opinion that these indorsers could plead and prove the prior oral agreement, under which the original indebtedness was created, and out of which the notes grew as a mere change of memoranda.

It is shown that the original advancements made by Turner to the corporation were never to be paid until the corporation, which was notoriously insolvent, should get on a paying basis and pay its other debts.

The undisputed evidence shows that, even after Turner asked for the notes, the advancements made by him were carried on the books of the corporation, just as in the beginning, and no change was made until an outside auditor, in going over the books, caused different entries to be made.

The undisputed evidence shows that nothing was ever demanded on the notes, and nothing ever paid, except the interest, as was agreed upon in the beginning, until after Turner's death. He at all times treated the notes as memoranda of the original agreement.

The rule prohibiting parol testimony varying the terms of a contract in writing has not been violated here. Central National Bank v. Lawson (Tex.Civ.App.) 7 S.W.(2d) 915, affirmed by Commission of Appeals in 27 S.W.(2d) 125.

But appellee insists that, since Turner is dead and his estate is involved in this suit as a codefendant with the other indorsers, all of the evidence given as to conversations, and transactions had with Turner were inadmissible under the provisions of article 3716, R.C.S.

■ Let it be borne in mind that this is a suit between Mrs. Anderson and the indorsers. She could have declined to sue the notoriously insolvent maker and the estate of her deceased brother who gave the note to her, had she so elected. If these indorsers can be held on the debt, they are liable jointly with Turner's estate.

■ It is definitely established that the statute here invoked must be strictly construed.

Let it be further borne in mind that so long as Turner lived, he acted as the agent of Mrs. Anderson in handling the note and its renewal. The undisputed facts establish this agency.

■ Under these facts, we will not say that, death having closed the mouth of Mrs. Anderson's agent who dealt with these indorsers and who secured their indorsements on the notes, the indorsers cannot be heard to testify to the statements and representations made by her agent. These indorsers are asking no affirmative relief against Turner's estate. They have no controversy with the estate.

For the reasons given, we are of the opinion that the indorsers cannot be held by Mrs. Anderson.

■ We are further of the opinion that the indorsers have been released from any liability, if any ever attached because the notes were never presented to the maker, payment refused by the maker and notice of dishonor given as required by the Negotiable Instruments Law, and no waiver made by any of the indorsers.

■ Issues 10, 11, and 12 and the findings are as follows:

"10. Do you find from a preponderance of the evidence that W. T. Ladd, on or about March 1, 1933, requested of J. B. Hamilton additional time in which to pay the note due March 1, 1933? Answer: Yes.

"11. Do you find from a preponderance of the evidence that B. H. Martin on or about March 1, 1933, requested of J. B. Hamilton additional time in which to pay the note due March 1, 1933? Answer: Yes.

"12. Do you find from a preponderance of the evidence that W. T. Ladd, on or about March 7, 1933, requested of J. B. Hamilton additional time in which to pay the note due March 1, 1933? Answer: Yes."

The finding made by the jury to issues Nos. 10, 11, and 12 are not sufficient upon which to authorize a finding of waiver on the part of Ladd, for his company, for himself as indorser, and for the estate of Turner as indorser.

The rule is laid down in Ruling Case Law, vol. 27, page 908: "To constitute a waiver within the definitions already given, it is essential that there be an existing right, benefit, or advantage; a knowledge, actual or constructive, of its existence, and an intention to relinquish it. No man can be bound by a waiver of his rights, unless such waiver is distinctly made, with full knowledge of the rights which he intends to waive; and the fact that he knows his rights, and intends to waive them, must plainly appear."

The evidence in this case does not show any intention upon the part of Ladd or Martin to waive their rights as indorsers.

In the same authority, page 912, it is said: "Whether there has been a waiver is generally a question of fact, and the sufficiency of the evidence relating thereto is for the jury. The jury may be properly instructed, as a matter of law, that a waiver must be voluntary, and that it implies a knowledge of the right, claim or thing waived; yet whether it was voluntary, and whether the party had knowledge of the right or thing waived, are still questions of fact to be submitted to the jury. Where, however, the facts and circumstances relating to the subject are admitted or clearly established, waiver becomes a question of law."

The indefinite finding by the jury that Ladd and Martin, "on or about March 1, 1933, requested of J. B. Hamilton additional time in which to pay the note due March 1, 1933," does not clearly establish a waiver of their rights as indorsers, and the trial court erred in so holding.

We think the rule is correctly stated in Worley v. Johnson, 60 Fla. 294, 53 So. 543, 33 L.R.A.(N.S.) 639, in which the indorser was told, before the note matured, that the makers denied liability and had told the holder that they would not pay the note at any time and, with such information at hand, the indorser stated that he did not have the money with which to pay the note, but that he was liable, and if the holder would sue the makers and fail to recover from them he would pay the note; but the Supreme Court of Florida held that this did not constitute a waiver, but would have been such had the conversation occurred after the note so matured.

Likewise, we think that the rule is correctly stated in Mechanics' & Farmers' Savings Bank v. Katterjohn, 137 Ky. 427, 125 S.W. 1071, Ann.Cas.1912A, 439, and Glidden v. Chamberlin, 167 Mass. 486, 46 N.E. 103, 105, 57 Am.St.Rep. 479, wherein the following is said: "An unqualified admission of liability, or a direct promise to pay, which imports such admission, is evidence of the most satisfactory kind. Evidence of circumstances or of conversations which are equivocal in their character, and which do not import a clear admission of liability, or amount to a distinct promise to pay, and which are consistent with the view that the indorser was merely seeking to avoid or postpone a suit against himself, are not satisfactory evidence either to prove actual notice or to re-establish the indorser's liability after it had ceased for want of demand or notice."

The jury does not find that the first conversation, had with Ladd, occurred either on the day the note fell due or the day after; and the finding with regard to the conversation with Martin is subject to the same criticism.

Hamilton could not fix the date by his testimony and any attempt to fix the date by the jury would be purely speculative, and the courts are not warranted in thus speculating, where a citizen's rights are at stake.

The jury does not find by answering issue No. 10, for whom Ladd requested additional time within which to pay the note maturing March 1, 1933. All of the evidence tends to show that his conversation was had with Hamilton, in whose hands Mrs. Anderson placed the note for collection, in the capacity of manager of the maker, Hub Furniture Company, and speaking for it. If Ladd was so acting, then his earnest prayer for more time for his company, the maker, could not affect his rights as an indorser. Mechanics' & Farmers' Savings Bank v. Katterjohn, 137 Ky. 427, 125 S.W. 1071, Ann.Cas.1912A, 439; Glidden v. Chamberlin, 167 Mass. 486, 46 N.E. 103, 57 Am.St.Rep. 479; Worley v. Johnson, 60 Fla. 294, 53 So. 543, 33 L. R.A.(N.S.) 639.

In the case of First National Bank v. Lee County Cotton Oil Co., 274 S.W. 127, the Commission of Appeals holds that the Negotiable Instruments Law of Texas now controls, with respect to the manner of fixing liability of indorsers, and article 566, Rev.St., is no longer available to a litigant for such purpose. See, also, Brummett v. Everts (Tex.Com.App.) 56 S.W. (2d) 863, 864.

What we have said of issue No. 10 **is** applicable to issues Nos. 11 and 12, relating to similar conversations had by Martin and Ladd with Hamilton. The findings do not disclose whether Martin and Ladd were speaking for the company, for the estate of Turner, or for themselves as indorsers.

It being settled that the Negotiable Instruments Act now governs as to the manner in which the liability of indorsers may be fixed, we will now discuss the situation before us, as it affects Ladd, Martin, Dr. Irion, and Mrs. Cowden and Turner's executors, indorsers.

In Brummett v. Everts, supra, Brummett held a note executed to him by one Flournoy, and unqualifiedly indorsed it, Everts becoming the holder in due course. Flournoy became insolvent, and Everts, without presenting the note for payment to Flournoy and without giving notice to Brummett that it had been so presented, demand for payment made and dishonored, proceeded under articles 566 and 1987, Rev.Statutes. Holding that these statutes do not control, when the liability of an indorser is involved, the Commission of Appeals said: "It follows, from what has been said, that Everts was not entitled to a recovery against Brummett, as indorser, in the absence of a showing that the note had been presented to Flournoy, the maker, for payment, as prescribed in the Negotiable Instruments Act, or that a state of facts existed which falls within some exception prescribed in said act."

Section 115 of article 5938 of such act provides: "Notice of dishonor is not required to be given to an indorser in either of the following cases: 1. Where the drawee is a fictitious person or a person not having capacity to contract, and the indorser was aware of the fact at the time he indorsed the instrument; 2. Where the indorser is the person to whom the instrument is presented for payment; 3. Where the instrument was made or accepted for his accommodation."

There is no evidence before us tending to support the fact of a presentment to the maker for payment of the note that matured March 1, 1933.

The letter written by Hamilton, for Mrs. Anderson, dated February 23, 1933, addressed to the maker, Hub Furniture Company, notifying it that a $5,000 note due Mrs. Anderson on March 1, 1933, was held by Hamilton for collection, and that Mrs. Anderson requests that it be paid when due, does not meet the requirements of the Negotiable Instruments Act, and is not such a presentment for payment as is necessary, if a proper predicate is being laid to show presentment, dishonor, and notice to an indorser.

On the same date Hamilton wrote to the Estate of W. G. Turner, c/o W. T. Ladd, a similar letter, reminding him of Turner's indorsement; and identical letters were written to W. T. Ladd and Mrs. Geo. E. Cowden.

On March 10, 1933, the law firm of Wren, Pearson & Jeffrey wrote a joint letter to the Hub Furniture Company and all of the indorsers, calling attention to the fact that the note due March 1, 1933, had been placed in their hands for attention. In that letter the lawyers said: "It appears that all of the parties to whom this letter is addressed, except Hub Furniture Company, are endorsers on this note. Such note was not protested and it becomes necessary to file suit at the next term of court to hold the endorsers on said note. Under direction of Mrs. Anderson, this is therefore to make demand upon you and each of you for the payment of said note."

Further in the letter the attorneys called attention to the note for $5,000 that would fall due on September 1, 1933, and gave the following notice: "Mrs. Anderson is not accelerating maturity of the other notes at this time, but requests that arrangements be made to take care of said note as and when it matures, and reserves the right to accelerate the maturity of all of said notes in the event the March 1st note is not paid."

No other evidence appears in the record except the conversations had between Hamilton and Ladd, and Hamilton and Martin, and they show to have been confined to statements concerning the inability of Hub Furniture Company to pay the entire note and a request for the privilege of paying the note in monthly installments. In none of the conversations, detailed by Hamilton, did either Ladd or Martin discuss their personal liability, or make any statement concerning their willingness, or unwillingness, to pay the note.

Mr. Ladd's testimony is that he had no recollection of receiving the letters written by Hamilton, on February 23, 1933, to the Hub Furniture Company, to himself as indorser, and as executor of Turner's estate,

and Hamilton testified that he could not say definitely on what dates he discussed the $5,000 note referred to in his letters of February 23, 1933, with Ladd. He said he assumed that the discussions were had between the dates of February 23d and March 8, 1933. But giving full force and effect to Hamilton's testimony, covering the conversations he had with Ladd, no presentment of the note for payment was made to Ladd, as an officer of the Hub Furniture Company, and none to the company, and there was no refusal by the company, or by Ladd, acting for it, to pay the note. Ladd only asked that Mrs. Anderson give the company an opportunity to pay in monthly installments. As to Martin, the testimony is even more meager.

All of the evidence discussed by us relates to the $5,000 note due March 1, 1933, and the record discloses that the other notes were to fall due on September 1, 1933, 1934, and 1935, respectively.

There is no testimony tending to show that Mrs. Anderson ever exercised her option to accelerate the maturity of these three notes until she filed her original cross-action on April 1, 1933, and in that pleading she alleges in connection with the note due March 1, 1933, that "demand was made for the payment thereof and payment refused. Due notice was given to the plaintiffs and demand made for payment of said note, but the defendant Hub Furniture Company and all of the plaintiffs refuse to pay the same or any part thereof." In the next paragraph she alleges that she has the right to declare all four of the notes due and "has declared and does now declare all of said notes due and has demanded payment of all of the plaintiffs, and the defendant Hub Furniture Company, which payments have been refused."

The amended cross-action upon which Mrs. Anderson went to trial contains no stronger allegations.

It is obvious that Mrs. Anderson seeks to hold the indorsers upon the theory that the provisions of articles 566 and 1987 protected her in so far as the indorsers' liability is concerned.

We have shown that she cannot rely upon such statutes to hold the indorsers.

It follows that the judgment of the trial court in favor of Mrs. Anderson against W. T. Ladd, B. H. Martin, Dr. J. W. Irion, and Mrs. Geo. E. Cowden, and the executors of Turner's estate, indorsers, on the three notes each for $5,000, due September 1, 1933, 1934, and 1935, respectively, should be reversed, and judgment here rendered, that Mrs. Anderson take nothing as against said indorsers on said three notes.

We are further of the opinion that the evidence does not support the judgment, in favor of Mrs. Anderson, against Ladd and Martin and the executors of Turner's estate, the indorsers on the $5,000 note, which matured March 1, 1933, and hold that said note was not presented for payment as the law directs, to the maker Hub Furniture Company, when it fell due, and notice of its dishonor given to the indorsers, and no waiver has been established, and such judgment should be reversed, and judgment here rendered, that Mrs. Anderson take nothing as against said indorsers on said note.

In the answer filed by Mrs. Anderson, she alleged: "That the plaintiffs, both before and after the note matured on March 1, 1933, importuned this defendant to grant an additional time for the payment of said indebtedness and agreed to pay the same in monthly installments beginning May 1, 1933, and such negotiations for additional time continued up to and after March 1, 1933, and by reason of all the facts above set out the plaintiffs and the Hub Furniture Company waived all of their defenses set out in said amended petition, presentment, notice and all other facts necessary to the recovery on said notes and are now estopped to interpose such facts as defenses."

In her cross-action, she alleged: "When said last described note became due on March 1, 1933, the defendant Hub Furniture Company within knowledge of all of said plaintiffs was without funds with which to pay the same, and a few days before same became due the defendant Hub Furniture Company and W. T. Ladd and B. H. Martin, acting for themselves and as executors of the estate of W. G. Turner, deceased, and for the other plaintiffs herein requested an extension of time for the payment of said note and entered into negotiations with J. B. Hamilton, assistant trust officer of the First National Bank of Fort Worth, Texas, who was this defendant's agent, for an extension of time for the payment of said note, and continued such negotiations up and after the same became due, and up until the time the plaintiffs filed their suit for cancellation."

She alleged further that by reason of such facts "The plaintiffs and her codefendant are liable and bound on said notes and each of them for a valuable consideration and waived any want or failure of consideration or misrepresentations, or mutual mistake, presentment, notice and all other defenses set out in their amended petition for cancellation and are now estopped to claim the same."

She further alleged: "At all times heretofore mentioned and at the time this suit was filed plaintiff W. T. Ladd was the president of and was general manager in charge of the business and affairs of the defendant Hub Furniture Company and was authorized, and the only person authorized, to pay the said notes for said defendant upon presentment. Said defendant and W. T. Ladd and all of the plaintiffs on March 1, 1933, and long prior thereto knew the defendant Hub Furniture Company was insolvent and unable to pay said notes and because of these facts and those hereinbefore alleged, and the filing of this suit to cancel said notes, presentment and notice were unnecessary and in any event were waived by all of the plaintiffs."

We do not believe that the allegations quoted are sufficient to constitute a pleading showing waiver of presentment, demand, and notice, in so far as Ladd is concerned, and we hold that such are ineffectual as to the rights of the other indorsers. Neither does the writer believe that such allegations are sufficient to bring the issue within subdivision 2 of section 115 of the Negotiable Instruments Act.

Subdivision 2 of section 115, quoted above, does not provide that notice of dishonor is not required to be given where the indorser is the person to whom the instrument may or should be presented for payment, but distinctly says "to whom the instrument is presented for payment." Such language requires actual presentment for payment to such person, unless it is in fact waived by him. First State Bank v. Ovalo Warehouse Ass'n (Tex.Civ.App.) 276 S.W. 773; First National Bank v. Lee County Cotton Oil Co. (Tex.Com.App.) 274 S.W. 127; Brummett v. Everts (Tex. Com.App.) 56 S.W.(2d) 863, 87 A.L.R. 1392; Worley v. Johnson, 60 Fla. 294, 53 So. 543, 33 L.R.A.(N.S.) 639; Mechanics' & Farmers' Savings Bank v. Katterjohn, 137 Ky. 427, 125 S.W. 1071, Ann.Cas. 1912A, 439.

We do not believe that the Head Case. (Tex.Com.App.) 7 S.W.(2d) 61, 63, is authority for this court to find that Ladd. and Martin have waived presentment, demand for payment and notice of dishonor, as relates to the first $5,000 note that matured March 1, 1933. In the Head Case the Commission of Appeals asserts that "an indorser may waive the failure to give notice of nonpayment in a variety of ways short of an unconditional promise to pay. Thus, a request for forbearance," and cites. in support of this pronouncement, Gove v. Vining, 7 Metc.(Mass.) 212, 213, 39 Am. Dec. 770.

There are no facts found in the record of the instant suit which tend to support any theory of waiver other than that deducible from a request for forbearance.

An examination of the opinion in the Gove Case discloses that the son of the agent of the holder of the note, on the day the note fell due, took the instrument and went to the house where the maker and the indorser both lived, and that he carried with him a written demand on the indorser for payment. Under the then existing law in Massachusetts three days' grace were allowed, and the court said: "This however, though payment was not then made, would not amount to a dishonor of the note, both because the days of grace had not expired, and it was not yet due; and because it was payable at a bank in Boston."

The messenger did not see the promisor, but did see the indorser, handed her the note and the written demand for payment and she read them. She told the messenger that the promisor was going down to see the messenger's father (the agent in charge of collection of the note), in a short time, and wished he would not sue on the note until the maker saw him. In holding that these facts constituted a waiver by the indorser, the court said:

"It was therefore a request, by the indorser, to the holders, through their agent, with full notice that the note was then nominally due (though not legally payable till three days after), for forbearance of payment. It was calculated to induce the holder to believe that the parties who were liable were about making some arrangement or some proposal, by which it would be paid, if he would forbear resorting to coercive measures for a short time.

"And the court are of opinion that when the indorser, at or shortly before the time

when the note becomes due, says to the holder, that an arrangement for its payment is about being made, and in direct terms, or by reasonable implication, requests the holder to wait or give time, it amounts to an assurance that the note will be paid—that the promisor or indorser will pay it—and is a waiver of demand and notice. It tends to put the holder off his guard, and induces him to forego making a demand at the proper time and place; and it would be contrary to good faith, to set up such want of demand and notice— caused perhaps by such forbearance—as a ground of defense."

The Gove Case is not authority for holding Ladd and Martin liable, and for finding that their conduct constitutes a waiver of their rights as indorsers, under the Negotiable Instruments Act.

Ladd did nothing to put Hamilton, or the owner, off his guard, nor did he induce either of them to forego making demand for payment at the proper time and place. Ladd only asked that his principal be given the right to pay the note off in monthly installments. There is nothing in the record to indicate that either the agent, Hamilton, or the owner, ever intended to grant the request, or that they refrained from doing anything that they would otherwise have done, but for the conversation had.

We are of the opinion that it would require more to be said by Ladd than is shown, or something said by the agent, Hamilton, at the time, indicating that reliance would be placed upon the indorser's statement and no further action had, until the parties could complete the arrangements for extending the note, in order to establish waiver.

Ladd neither did, nor said, anything, on which the agent, or the owner of the note, acted. What has been said of Ladd applies with more force to Martin, because of the scant testimony concerning his statement and acts.

There is no definite evidence to establish when the first conversation was had with Ladd, or when the only conversation was had with Martin. To permit the jury to say that these two conversations occurred prior to March 1, 1933, or on that date, is to make a farce of the necessary fact findings by a jury, and subjects the citizen to the mercy of the jury, and enables him to be penalized at the jury's whim, or through the jury's prejudice, should they so be moved.

Under such circumstances, the court should hold that the evidence is too indefinite and uncertain to meet the requirements of the burden of proof, and judgment should be rendered releasing the indorsers.

If the conversations were had with Ladd and Martin after the date on which payment should have been demanded and notice of dishonor should have been given the indorsers, the law had released them from their liability as indorsers, and there is nothing in the evidence establishing a renewal of their liability.

In the case of Farmers' & Mechanics' Bank v. Head (Tex.Com.App.) 7 S.W.(2d) 61, 62, cited in support of the proposition that Ladd and Martin waived presentment, demand for payment and notice of dishonor, the opinion clearly states the following: "As said by the Court of Civil Appeals [268 S.W. 992], the sole question in this case is whether or not there was an implied waiver by Head, after the omission to give notice to him of nonpayment of the note at its maturity; or, at least, a determination of this question in the affirmative will be decisive of the case."

Further in the opinion, it is said: "The true test is the intention of the indorser. Whatever the act or conduct relied upon as a waiver, if it constitutes a clear recognition of a continued liability, * * * or reasonably is such as to induce the conclusion that such waiver was intended, * * * or to evidence a willingness of the indorser to be bound by the contract notwithstanding the laches of the holder, * * * or the use of words showing a clear intention to pay, * * * it will constitute a waiver."

In the Head Case, the note was past due, and the court held that Head necessarily knew that no notice of presentment, demand, and dishonor had been given him, when he made the statements to the holder, which were held to constitute a waiver by him; and, in discussing such situation, the court further said: "It is like the legal concept of election of remedies. The indorser upon the failure to receive notice is given the choice to be discharged from liability or to continue to recognize liability and be bound upon the instrument, and, having made the choice of the latter, there is a waiver independent of any principle of estoppel and independent of whether or not there has been a new promise which, of itself, would support an action."

It seems clear to us that this language deals with the conduct of an indorser after the instrument has matured and after no notice of dishonor has been given to him, and it is equally clear that there must be an estoppel where the conduct relied upon and the words spoken were done and uttered by the indorser before the maturity of the note, or on the day of its maturity.

Under the first state of facts, he has been released by law, before the conduct arises; under the second state of facts, he is, at the time when he utters the words and performs the acts, bound by the law, and can be held to his obligation by the timely act of the holder. Justice to him demands that he be guilty of doing or saying something to prevent the holder from taking the necessary steps to bind him to his contract of indorsement, and that it be clearly established that the holder relied upon his conduct and refrained from taking steps to bind him, by reason of such reliance. Thus the element of estoppel is unquestionably necessary to give life to the waiver that comes into being before the maturity of the instrument.

And it will be seen that, whether that which is relied upon as constituting a waiver occurs before the maturity of the note or afterward, is of vital importance, and what is said and done by the indorser is most important.

When the agent of the holder could not fix the date of the conversations with Ladd and Martin, these indorsers should have been given the benefit of the insufficiency of such evidence by the trial court, and such protection not having been given, when the cause was tried below, this court should here and now give it, and reverse and render the case.

We are of the opinion that we are not warranted in relying upon the decision in the case of Sunlite Co. v. Justice (Tex. Civ.App.) 257 S.W. 579 (writ dismissed), and in holding that, by bringing suit to protect a defense then existent and, but for which action, would in all likelihood be lost, the indorsers have waived a defense that has not come into being, and which may never be available to them.

The rule is established that a litigant may plead as many inconsistent defenses as may be raised by him. To hold that the indorsers have waived a defense which had never come into being is to deny them a right that afterward accrued.

We do not believe that any such harsh rule should be exacted of an indorser, or that he should be denied the protection of the provisions of the Negotiable Instruments Act, because he timely acted to preserve a right that would, in all probability, be lost by his inaction.

In the case of Beckham v. Scott (Tex. Civ.App.) 142 S.W. 80, it is held that demand for payment must be made where notes contain accelerating maturity clauses. Following this case, we find the following language used in Griffin v. Reilly (Tex. Civ.App.) 275 S.W. 242, 248: "Where the acceleration clause in a promissory note leaves it optional with the holder whether he shall declare the whole amount due upon failure to pay any installment of principal or interest, such holder cannot, without presentment for payment, exercise his option to declare the whole amount due, if no specific place of payment is expressed in the note, until it has been presented to the payor at the latter's known place of business." This case is followed by Parker v. Mazur (Tex.Civ.App.) 13 S.W.(2d) 174.

Under the facts in the case before us, merely bringing the suit on the notes that were not due was not a demand for payment of the notes sought to be matured through the accelerating maturity clause. These last three maturing notes have never been presented for payment.

No waiver having been shown on the part of the indorsers, this presents another reason why they cannot be held.

We are of the opinion that the judgment of the trial court should be affirmed in so far as it relieves the named indorsers on the note that first matured, but that such judgment should be reversed and judgment here rendered for all of the indorsers, on all of the notes, and that the judgment against the Hub Furniture Company should be affirmed, it not having appealed.

The former judgment and opinion are withdrawn. Affirmed in part, and reversed and rendered in part.